GEORGE BROOKS & another *vs.* LEVI T. PRESCOTT.

In a bill of exceptions allowed at the trial of a jury waived case were stated the find-
ings of the court as to some facts, but the evidence, without findings, as to other facts,
and it appeared that "upon the facts found and their effect in law, the court ruled
that this action could not be maintained, and found for the defendant." *Held*, that the
right of the plaintiff to maintain the action depended upon the findings upon the
whole evidence, and unless the facts found were in themselves conclusive against the
plaintiff, notwithstanding all inferences in his favor which could be drawn from them
and from the reported evidence, so that he could in no aspect of the case maintain the
action, a new trial must be had.

TORT for the conversion of a wooden building used as a stable.
The answer denied the conversion and the plaintiffs' property.

Trial in the Superior Court, before *Brigham*, C. J., who al-
lowed the plaintiffs the following bill of exceptions :

"Trial by jury was waived and the action was heard and de-
termined by the court, upon finding the facts following, to wit:
The building was built and used as a stable in 1868, and after
September 4, of that year, by one Frank M. Reynolds, who was
at the time a partner of the plaintiffs in the business of teaming,
but not in their general business. The plaintiffs furnished Rey-
nolds with $900 to build the stable, under an agreement that he
should become its owner when he had repaid that sum in instal-
ments of $25 a month. Under this arrangement Reynolds repaid
$100. Neither of the plaintiffs were witnesses at the trial, and
Reynolds having testified that he had had no settlement with
them, and that they owed him $1000 and had never paid him,
and that being the only and entirely uncontrolled evidence on
the subject, the court found that the plaintiffs' indebtedness to
Reynolds was equal to the balance due them ; but there was no
evidence that there was any agreement between Reynolds and
the plaintiffs that these claims should be set off against each
other, though Reynolds claimed the right to do so.

"Reynolds erected the stable on a lot of land situated at the
intersection of Elm and Hampshire Streets, in Cambridgeport.
This lot, 'with the buildings thereon,' (which consisted of a
dwelling-house only,) was conveyed to Reynolds by Elizabeth

Holden, September 4, 1868, and on that day Reynolds made a. power of sale mortgage of the lot, ' with the buildings thereon,' tc Elizabeth Holden, to secure the payment of $4000 in five years; of which sum $400 was to be paid in one year. November 1, 1868, Reynolds and plaintiffs, in pursuance of the agreement between them in relation to the erecting of the stable, executed and delivered each to the other an indenture, by which Reynolds let to them the lot of land on which the stable had then been built for the term of five years from October 1, 1868, at a rent of $1 for the whole term, and they let to him ' the stable then standing on said lot,' for ' a rent of $300 per annum,' and the plaintiffs agreed ' to quit and deliver up said land to said Reynolds,' and said Reynolds agreed 'to quit and deliver up said stable to said Brooks & Joslyn, and to allow them, or their agents or attorneys, to remove the same from said land at the end of the term.' Reynolds occupied the lot and the dwelling-house thereon, and the stable, until November, 1869, paying no rent. There was no evidence that under the indenture the plaintiffs ever entered upon the lot, or were in possession of it, or that they ever claimed or attempted to enforce payment of rent for the stable, or exercised any of their legal rights as lessors of the stable against Reynolds, as lessee, for failing to pay rent.

" October 11, 1869, Elizabeth Holden, upon Reynolds's default in the payment of the $400 required by the mortgage to be paid in one year, caused the lot of land ' with the buildings thereon ' to be sold at public auction to the defendant for $4500, and upon payment of that sum she conveyed the lot to him, not intending to convey the stable, and he took possession of the lot and of the buildings thereon, including the stable, and occupied them by his tenants until this action was brought. October 13, 1869, Reynolds made a quitclaim deed of the ' lot of land with the buildings thereon ' to the defendant for one dollar.

" Elizabeth Holden, when she directed the lot to be sold at auction, told the auctioneer that she did not consider the stable as included in the mortgage, and instructed him to sell the lot without it, as it was built, after she received her mortgage, and directed him to make an announcement to that effect at the auc-

tion.   The auctioneer did so, and the defendant's agent, who was the highest bidder, heard the announcement.   The defendant after he received his deeds offered to one Buckley, an agent of the plaintiffs, to pay $200 for the stable (it being at the time worth at least $500) in connection with his statement that he had been advised by counsel that he could hold it.   This offer was not communicated to the plaintiffs, and was made to avoid a lawsuit.

" In the fall of 1869, Buckley, as agent of the plaintiffs, caused the stable to be advertised for sale by auction, and offered it for sale to the highest bidder.   Thereupon a person acting as the defendant's agent publicly declared that the defendant would object to the removal of the stable from the lot, and thereupon a nominal sale of it was made to Buckley, as agent for the plaintiffs, for $200.

" The stable was a wooden one of two stories, 30 feet long by 24 wide, resting on eight wooden posts, which entered the soil to the depth of two or three feet.   The sills were fastened to the posts by iron spikes, and the outside boarding extended over the sills to the ground.   The entrance to the stable was by an inclined wooden platform fastened to the ground and to the stable. A water pipe from an aqueduct entered the stable from under ground and was fixed to it.   Between the dwelling-house and the southerly boundary of the lot there was not space sufficient for moving the stable.   Between the stable and Hampshire Street, the space was occupied by fruit trees, and outside of the lot on the border of the adjacent sidewalk were shade trees, and the space thus occupied was not sufficient for the moving of the stable over it.   There were adjacent vacant lots of land on the southerly and westerly sides of the lot, and there was no physical obstacle to moving the stable to these lots.

" There was no evidence of any express agreement or under-standing between Elizabeth Holden and Reynolds that the stable should be treated as personal property, or that the mortgage deed should not apply to it, or that Reynolds should have the right to sell or remove it ; but Elizabeth Holden never claimed it.   The only acts of the defendant which, it was claimed, constituted a conversion, were the acts of letting and of collecting

rents for the use and occupation of the stable, and his announce-- ment, when Buckley attempted to sell it, that he should object to its removal from the lot. The foregoing facts were the only facts of which there was any evidence at the trial.

"The plaintiffs claimed property in, and the right of possession of the stable, under their arrangement with Reynolds to advance money to build it, their advance of money, Reynolds's failure to repay it, and the indenture of lease. The defendant claimed property in, and the right of possession of the stable, under the deed of Elizabeth Holden and under Reynolds's quitclaim deed, which he claimed operated as an assignment and conveyance to him of Reynolds's interest in it under the indenture of lease. Upon the facts found and their effect in law, the court ruled that this action could not be maintained, and found for the defendant."

*J. W. Hammond,* for the plaintiffs.

*J. B. Richardson,* for the defendant.

WELLS, J. This case is complicated by the form of the ruling excepted to. Trial by jury was waived, and the cause heard for the purpose of being determined by the court. The court found certain facts stated in the bill of exceptions, and there was evidence, also set forth as evidence, in relation to other matters of fact, upon which no conclusions of the court are stated.

"Upon the facts found and their effect in law, the court ruled that this action could not be maintained, and found for the defendant."

The ruling of the court, thus stated, implies either that there was no evidence upon which the plaintiffs' case could be made out, or that the facts specially found, or some of them, were conclusive against the plaintiffs to defeat their claim, notwithstanding all conclusions and inferences in their favor, of which the facts and evidence reported were capable.

It is the province of the court below to determine all matters and inferences of fact. If the finding here had been general for the defendant, that conclusion, involving both law and fact, would be sustained unless error in law could be shown. All conclusions and inferences which could properly be drawn from the facts and evidence would be presumed to have been drawn by

the court below in the manner most favorable to the general con•
clusion there made. But the general finding for the defendant
is pieceded by the ruling that the action could not be maintained
" upon the facts found and their effect in law." The general
conclusion therefore was one of law, and there is no conclusion of
fact, except as to the facts specially found and stated. The case
is presented to this court substantially as in a jury trial when the
judge rules that the action cannot be maintained upon the evi-
dence and directs a verdict for the defendant.

The question for us to determine is not what the court below
ought to have found upon the evidence ; nor whether it might
properly find for the defendant; but whether in any aspect of
the case that court might have found for the plaintiffs. If it
might have so found for the plaintiffs, then the case remains still
undetermined upon the facts, and must remain in that court for
adjudication.

We are of opinion that the case was open to a decision either
way upon the facts and evidence disclosed, according to the in-
ferences and conclusions of fact which might be drawn therefrom
in the court below; and that there is no fact specially found
which is decisive of the case in favor of the defendant.

When the building was erected, Reynolds was the owner of
the land, subject to a mortgage to Elizabeth Holden. The build-
ing was of such a character as might be held by one not owner
of the land, with right of removal as personal property. It was
placed upon the land under an arrangement, not fully disclosed
in the bill of exceptions, but doubtless appearing more in detail
at the hearing, which might warrant a finding, as matter of fact,
that it was to be the property of the plaintiffs until they shou.d
be repaid their advances for its construction. The evidence in
regard to repayment was such as at least to authorize the court
to find that there had been no such appropriation of the money
due from the plaintiffs to Reynolds, as to apply it to or make it
operate as payment of those advances, so as to vest the title ab-
solutely in Reynolds. There was evidence also from which it
might have been found, as matter of fact, that Elizabeth Holden
knew of the arrangement between the plaintiffs and Reynolds.

and assented to the erection of the stable in pursuance thereof so as to bind her as well as Reynolds. *Howard* v. *Fessenden*, 14 Allen, 124. *Bartholomew* v. *Hamilton*, 105 Mass. 239. *Morris* v. *French*, 106 Mass. 326. Also, that the defendant took his title with such knowledge of the rights of the plaintiffs as to preclude him from resisting them as a *bonâ fide* purchaser without notice.

If the findings had been favorable to the plaintiffs upon these several points, we think their action might have been maintained.

The court did not find against the plaintiffs upon any of these points; and we do not discover any other fact actually found by the court, which would preclude a judgment for them.

We do not see that the indenture of lease affects the case otherwise than as evidence of the respective rights of the parties while it remained operative. But it was defeated as a lease by the sale under the power contained in the mortgage ; and being thus terminated, the right of removal, so far as it depended upon that instrument, became a present right. The conduct of the defendant in regard to its removal, and his occupancy and control of it were sufficient to show a conversion.

The quitclaim deed from Reynolds to the defendant could not defeat the rights of the plaintiffs if they had any.

The right of the plaintiffs to maintain their action must depend upon the findings of fact in the court below upon the whole evidence in the case. As those facts have not all been passed upon, there must be another trial in that court.

*Exceptions sustained.*