THOMAS H. DOLLIVER, administrator, *vs.* GEORGE W. ELA.

Essex. January 7. — June 22, 1880. COLT & LORD, JJ., absent.

A., while in possession of land belonging to B., who had agreed to give him a deed upon certain terms, erected a building thereon under an agreement that it was not to be the property of B., but that A. should have the right to remove it at any time. Subsequently A., without the knowledge of B., sold the building by bill of sale, not recorded, to C. Afterwards B., at the request of A., conveyed the land to D. by a warranty deed, which made no mention of the building. At the same time, B.'s agreement to convey to A. was given up, and A. gave B. a release of the land "with all the privileges and appurtenances thereto belonging." C. then brought an action against B. for the conversion of the building. *Held,* that, as against B., the title to the building passed by the sale to C.; and that the action could be maintained.

TORT for the conversion of certain buildings. Trial in the Superior Court, without a jury, before *Pitman,* J., who reported the case for the determination of this court, in substance as follows:

It appeared that the buildings in question were erected by one Ashworth, upon land of the defendant, in such a manner as to become a part of the realty but for the contract hereinafter referred to, and that they were never physically severed from the realty up to the date of the writ. At the time of their erection, which was in the spring of 1868, Ashworth was in the possession

of the land under the following circumstances. He had been previously a tenant of the defendant under a written lease, and had erected a brewery which had been destroyed by fire. On February 17, 1868, the lease was cancelled by mutual consent, and a warranty deed was made and signed by the defendant, conveying the premises for a price agreed to Ashworth, and at the same time Ashworth executed a mortgage back to the defendant to secure a part of the purchase money. The mortgage deed was delivered to the defendant, but the warranty deed was not delivered. The defendant gave to Ashworth, as a part of the same transaction, a written agreement by which he agreed to deliver the deed upon receiving that portion of the purchase money not covered by the mortgage. This money was never paid, nor the deed delivered. Ashworth continued to occupy the premises under an agreement to pay defendant, quarterly, a sum equal to the quarterly interest upon the purchase money.

Prior to the erection of the buildings in question, it was understood and agreed, but not in writing, between the defendant and Ashworth, that they were not to be the property of the defendant, but that he, Ashworth, should have the right to remove them at any time. While Ashworth was in possession of the premises as aforesaid, on October 3, 1868, he conveyed the buildings, by a bill of sale in common form and under seal, to the plaintiff's intestate, for a valuable consideration, and she took possession. On April 7, 1869, the defendant, at the request of Ashworth, conveyed the land, by warranty deed in common form, to one King; and thereupon, and as a part of the same transaction, the agreement for a deed from the defendant to Ashworth was given up, and Ashworth gave to the defendant a release of the land "with all the privileges and appurtenances thereto belonging."

At the time of the deed to King, the defendant did not know of the conveyance from Ashworth to the plaintiff's intestate. The deed to King and the deed of release to the defendant were duly recorded on April 9, 1869. King had no knowledge of the bill of sale of Ashworth to the plaintiff's intestate. The deed to King made no mention of the buildings, but described the land by metes and bounds, and the habendum contained the usual phrase "with all the privileges and appurtenances thereunto

belonging." The defendant had no actual possession of the premises from Febuary 17, 1868, down to October 1872, when he entered to foreclose a mortgage of the estate given by King to him.

The defendant asked the judge to rule as follows : " 1. No title to the buildings, while annexed to the realty, could pass to the plaintiff's intestate, as against the defendant, by the bill of sale. 2. This action will not lie against the defendant upon the evidence, even though the plaintiff's intestate had the right of removal. 3. There was no evidence which would authorize a finding that the defendant converted the buildings."

The judge refused so to rule, but held, as matter of law, that, as against the defendant, the title to the buildings did pass to the plaintiff's intestate by the bill of sale ; that this action would lie upon the facts ; and that the deed from the defendant to King operated as a conversion of the buildings, enabling King, a purchaser without notice, to hold the same as against the plaintiff's intestate, as a part of the realty ; and, upon these findings and rulings, found for the plaintiff, and assessed damages in the sum of $1302.40, being the value of the buildings for purpose of removal at the date of the defendant's deed, with interest thereon.

If there was error in the refusal to rule as requested, or in the rulings made, a new trial was to be had ; otherwise, judgment to be entered for the plaintiff.

*E. T. Burley*, for the defendant.

*J. C. Sanborn & W. S. Knox*, for the plaintiff.

MORTON, J. It has been decided by this court, in several cases, that, if a man puts a house or other building upon land of another, under an agreement with the owner of the land that he may remove it, the building remains his personal property. He may lose his right to it if the land is sold to an innocent purchaser without notice of the agreement. He cannot set up his title against such innocent purchaser, whom he has misled by permitting the building to be attached to and apparently a part of the realty bought by him. But, as against the original owner of the land and all persons taking under him with notice, the building never becomes a part of the realty, but remains personal property, and he, or a purchaser from him, may maintain replevin or trover to recover it or its value, even while it remains

upon the land and apparently a part of the realty. *Hunt* v. *Bay State Iron Co.* 97 Mass. 279. *Curtis* v. *Riddle,* 7 Allen, 185. *Hinckley* v. *Baxter,* 13 Allen, 139. *Brooks* v. *Prescott,* 114 Mass. 392. *Hartwell* v. *Kelly,* 117 Mass. 235.

In the case at bar, it is found as a fact, that Ashworth put the buildings in controversy upon the land of the defendant under an agreement " that they were not to be the property of the defendant, but that he, Ashworth, should have the right to remove them at any time." By virtue of this agreement, they never became a part of the defendant's real estate, but remained the personal property of Ashworth. He had the right to sell them to the plaintiff's intestate, and the plaintiff can maintain this action of tort in the nature of trover against the defendant if he converted them to his own use.

The question whether, upon the facts proved, the defendant was guilty of a conversion, is not free from difficulty. To understand it, it is necessary to refer to the facts which show the relations between the parties. The defendant had agreed to give Ashworth a deed of the land, upon his paying a part of the price, and giving a mortgage for the balance. Ashworth was thus the equitable and beneficial owner of the land, and he was in the occupation of it under an agreement to pay the defendant a sum equal to the interest upon the price. While thus in possession, he sold the buildings by a bill of sale, not recorded, to the plaintiff's intestate. Afterwards Ashworth requested the defendant to convey the land to one King, which the defendant did by a warranty deed in the common form, which made no mention of the buildings. At the same time, the defendant's agreement to convey to Ashworth was given up, and Ashworth gave to the defendant a release of the land " with all the privileges and appurtenances thereto belonging." At the time of this transaction, the defendant did not know of the sale to the plaintiff's intestate. But he knew that, by virtue of the agreement he had made, the buildings remained personal property, and he is presumed in law to have known that the effect of his sale of the land to King would be to give him a title to the buildings, and thus deprive the owner of all right to them. This sale to King was the exercise of dominion over the property inconsistent with the right of the plaintiff's intestate, who was

the owner. It is similar to the common case where a man innocently sells and appropriates to his own use the property of another, in ignorance of the ownership. Such appropriation, though not made with any intent to wrong the owner, is in law a conversion. We are, therefore, of opinion, that the rulings at the trial in the Superior Court were correct.

*Judgment for the plaintiff.*