GEORGE E. SEARLE *vs.* ROMAN CATHOLIC BISHOP OF SPRINGFIELD.

ROMAN CATHOLIC BISHOP OF SPRINGFIELD *vs.* GEORGE E. SEARLE & others.

Hampshire.    September 21, 1909. — November 11, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Evidence,* Extrinsic affecting writings.    *Fixtures.    Personal Property.    Landlord and Tenant.    Jurors and Jury.    Practice, Civil,* Verdict.

In an action for the conversion of a building, alleged to be personal property upon land of the defendant placed there under an agreement with one of his predecessors in title, of which the defendant had notice when he purchased the land, if there is oral evidence that at the time of the erection of the building there was an agreement express or implied between the owner of the land and one S., representing himself and the plaintiff, that S. should erect the building on the land for the use of the plaintiff, and that the building should be personal property belonging to S. until it was paid for in full by the plaintiff and should be held by S. as collateral security for the price to be paid for its construction, and if a lease in writing is put in evidence from the owner of the land to S. of the portion of the land on which the building stands, the oral evidence of the conversation and circumstances tending to show the agreement and the transaction, of which the giving of the lease was a part, is not incompetent as varying the terms of the lease.

In an action for the conversion of a building, alleged to be personal property upon land of the defendant placed there under an agreement with one of his predecessors in title, of which the defendant had notice when he purchased the land, there was evidence that at the time of the erection of the building there was an agreement express or implied between the owner of the land and one S., representing himself and the plaintiff, that S. should erect the building on the land for the use of the plaintiff, and that the building should be personal property belonging to S. until it was paid for in full by the plaintiff and should be held by S. as collateral security for the price to be paid for its construction, and a lease in writing was put in evidence from the owner of the land to S. of the portion of the land on which the building stood, requiring the payment of rent at the rate of $12.50 a month.    There was further evidence that S. thus held the lease for the protection of his rights, and that, as soon as the building was paid for, he delivered the lease to the plaintiff, who was occupying the building, that the plaintiff continued in possession in the same manner during the life of the owner of the land and, after her death, during the ownership of her son, who was the devisee under her will, and under purchasers from him, who through a third person sold the land to the defendant, and that during this time the plaintiff continued to pay rent at the rate of $12.50 a month to the successive owners of the land, who recognized his right to remove the building, up to the time of the sale to the defendant, who had notice of the plaintiff's claim before taking his deed.    *Held,* that the evidence warranted a finding

that the parties expressly or impliedly agreed that the plaintiff might continue his tenancy on the terms previously existing, with the same rights in the building that he had under the agreement with the owner of the land after the plaintiff had paid S. for the construction of the building.

In an action against a Roman Catholic bishop for the alleged conversion of a wooden building, alleged to be personal property, standing on land held by the defendant as a corporation sole as a site for a church edifice in a town in the defendant's diocese, it is error for the presiding judge to rule that no person of the Roman Catholic faith shall sit as a juror in the case, and under this ruling to exclude from the jury two persons who are respectively residents of two towns in the diocese other than the town in which the land is situated, where there is nothing to show that mere residence in the diocese gives any pecuniary interest in the action to Roman Catholic residents in such other towns.

At the trial of an action against a Roman Catholic bishop for the alleged conversion of a wooden building, alleged to be personal property, standing on land held by the defendant as a corporation sole as a site for a church edifice in a town in the defendant's diocese, an erroneous ruling by the presiding judge, at the request of the plaintiff, that no person of the Roman Catholic faith shall sit as a juror in the case, and the exclusion from the jury under this ruling of two persons qualified to serve as jurors in the case, affect the defendant's right under R. L. c. 176, § 25, to have the excluded men sit as jurors unless challenged by the plaintiff, and operate to give the plaintiff the right to two peremptory challenges under § 29 of the same chapter which he would have exhausted if he had challenged the two excluded jurors peremptorily; and therefore such ruling and exclusion constitute an injury to the objecting party sufficient to require the setting aside of a verdict under the provisions of R. L. c. 176, § 32.

TWO ACTIONS OF TORT; the first action by George Everett Searle against the Roman Catholic Bishop of Springfield, who as a corporation sole under St. 1898, c. 368, held the title to certain real estate in the town of Easthampton, which was bought as a site for a church edifice, alleging the conversion by the defendant of a one story and a half wooden building alleged to be personal property and to be the property of the plaintiff, having been built for the plaintiff by one Charles W. Smith, with the consent of Delia A. Strong, who then was the owner of the land; and the second action by the defendant in the first case against the plaintiff in the first case and certain other persons, for damages alleged to have been caused by an attempt to remove the building from the real estate, of which it was alleged to be a part, seeking also equitable relief by way of injunction. Writs dated respectively July 16, and July 15, 1907.

In the Superior Court the cases were tried together before *Dana,* J. In the first case the jury returned a verdict for the

plaintiff in the sum of $800, and in the second case the jury returned a verdict for the defendants. The Roman Catholic Bishop of Springfield alleged exceptions as the defendant in the first case and as the plaintiff in the second case, raising the questions which are disposed of in the opinion.

*J. C. Hammond,* for the Roman Catholic Bishop of Springfield.

*E. L. Shaw,* for Searle and others.

KNOWLTON, C. J. The question at the trial was whether a building erected on land of the defendant in the first action, who will hereinafter be called the defendant, was personal property belonging to Searle, who will hereinafter be called the plaintiff, or was real estate owned by the defendant.

The jury might well find that there was either an express or implied agreement between Mrs. Strong, the owner of the land at the time of the erection of the building, and Smith, representing both himself and the plaintiff, that the building should be personal property belonging to Smith until it was fully paid for by the plaintiff, and should be held by Smith as collateral security for the price to be paid for the construction of it, and should belong to the plaintiff as soon as this price should be fully paid. Oral evidence of the conversation and circumstances tending to show this was not incompetent as varying the terms of the lease.*

The evidence tended to show that Smith held the lease for the protection of his rights in this particular, that, as soon as the building was paid for, he delivered the lease to the plaintiff, who was in occupation of the building, and that the plaintiff continued to hold under the same tenancy after the death of Mrs. Strong, while the land belonged to her son, Clinton E. Strong, the devisee under her will. The recognition of this lease was a recognition of the continuance of the same tenancy by the plaintiff under the terms of the original writing, which was given in the name of Smith, but in part for the plaintiff's benefit. The original ownership of the building by Smith and

---

* This was a lease from Mrs. Strong to Smith of "the land on the westerly side of Union Street in Easthampton upon which he has recently erected a building thirty feet wide and forty feet long." It was dated October 16, 1897, and was for the term of five years from September 15, 1897. The rent was $12.50 a month.

his right of removal being established, there was ample evidence of the succession of the plaintiff to these rights, and they were recognized by the landowner and continued by the implied agreement of the parties, if not by their express agreement, up to the time of the sale by Clinton E. Strong to Edwards and Hitchcock.* · *Hartwell* v. *Kelly*, 117 Mass. 235. *Howard* v. *Fessenden*, 14 Allen, 124. *Hunt* v. *Bay State Iron Co.* 97 Mass. 279. *Dolliver* v. *Ela*, 128 Mass. 557, 560. *Ryder* v. *Faxon*, 171 Mass. 206. Testimony of the subsequent admissions and dealings of the parties was competent on this part of the case. *Korbe* v. *Barbour*, 130 Mass. 255, 258. *Barnes* v. *Hosmer*, 196 Mass. 323, 325. *Morris* v. *French*, 106 Mass. 326, 327. *Handforth* v. *Jackson*, 150 Mass. 149, 154.

There was some contradiction in the testimony relative to the conversations between the plaintiff and Edwards and Hitchcock after their purchase of the land, but the weight of the evidence is in favor of the plaintiff's contention that they continued his tenancy on the same terms as had existed before, and that they intended to preserve to him such rights in the property as he had, if any, when they took their title. The jury properly might find that, if he owned the building with a right to remove it when they bought the land, they continued his tenancy and left him without interruption of such rights as he had by virtue of

---

* Clinton E. Strong gave to Edwards and Hitchcock a warranty deed of the real estate dated December 17, 1906, describing it as " a certain tract or parcel of land with the buildings thereon, bounded " etc., giving the boundaries. Edwards and Hitchcock, through one MacBean as a conduit, conveyed the real estate to the defendant in the first case. Mrs. Strong died on September 5, 1899. After her death the plaintiff continued to pay rent at the rate of $12.50 a month to Clinton E. Strong and afterwards to Edwards and Hitchcock up to the time of the sale to the defendant. The lease was extended by Clinton E. Strong until May 1, 1904. After the extension expired, upon the plaintiff asking for a new lease, Strong told him that it would not make any difference whether the plaintiff had a lease or not, that " he could keep right along just the same; pay the rent the same as he had "; that the plaintiff spoke of his right to move the building and that Strong said, " You keep along just as you have and it will be all right; " that, about January 1, 1907, after the sale to Edwards and Hitchcock, the plaintiff paid $12.50 to Hitchcock as land rent and then had a conversation with Edwards about moving his building in which Edward said " If I can sell the property I will give you all the time you want to move off your building."

his dealings with the former owners. They gave him no intimation at any time that his right of removal of the building must be exercised promptly, or that in continuing his tenancy he was not occupying on the same terms as when they took their title. The presumptions of fact as to the terms of his holding are in his favor on this point. *Dimock* v. *Van Bergen*, 12 Allen, 551. *Weston* v. *Weston*, 102 Mass. 514, 518. *Finney* v. *St. Louis*, 39 Mo. 177, 181. *Quinette* v. *Carpenter*, 35 Mo. 502.

The difference in testimony between these owners and the plaintiff at the trial was not as to whether they undertook to terminate any rights which he had when they took their title, but whether he had any title to the building at that time, and if he had, whether they expressly recognized it. The evidence warranted a finding that the parties expressly or impliedly agreed that he might continue his tenancy on the terms previously existing, with the same right in the building that he had under their grantor, whatever that might be.

The defendant and his agents and representatives had notice of the plaintiff's rights before taking the deed. It is not contended that the defendant has the rights of a purchaser in good faith without notice or information of the plaintiff's claim. The fact that he relied upon a warranty in a deed of a former owner is immaterial to this case.

Most of the questions of evidence are sufficiently covered by what we have said and by the cases already cited. In general, the dealings and conversation of the parties with each other, in reference to the property in question, are material.

We do not see the pertinency of Exhibit Two * and the testimony about the erection of the horse shed on land near this building, and we think they should not have been admitted. It is also very doubtful whether, upon the facts that appear of record, the procurement of insurance and the payment of taxes on the building by the plaintiff could properly be proved, against the defendant's objection.

Exception was taken by the defendant to the ruling of the judge at the request of the plaintiff, that no person of the Roman Catholic faith should sit as a juror in these cases. Under

---

* This was an agreement to which neither Smith nor Searle was a party.

this ruling two jurors were excluded from the panel, one a resident of Northampton and the other a resident of South Hadley. The ruling was made on the ground that the defendant is the Roman Catholic Bishop of Springfield, a corporation sole under the St. 1898, c. 368, who holds the title to the real estate in trust for the Roman Catholic church, and that these excluded jurors have an interest in the suit analogous to that which taxpayers have in a suit against the city or town in which they reside. It is not contended and it could not successfully be contended that holding the same religious belief as one of the parties, or affiliation with him in the same church, would disqualify a person from sitting as a juror in his case. The application of such a doctrine would be unjust and impracticable. *Commonwealth* v. *Buzzell,* 16 Pick. 153. *Purple* v. *Horton,* 13 Wend. 1. *Barton* v. *Erickson,* 14 Neb. 164. *Smith* v. *Sisters of Good Shepherd,* 27 Ky. Law Rep. 1170.

The real estate held by the defendant is in the town of Easthampton, and it was bought as a site for a church edifice. The excluded jurors were not taxpayers in that town, and it may be assumed that they were not members of the parish that was expected to use the church. The ruling applied to all jurors of the Roman Catholic faith, without reference to their residence, or to any close affiliation with the local church. Has every person of the Roman Catholic faith in the diocese of the bishop of Springfield a pecuniary interest, of which the court can take notice, in every church owned by the defendant in every part of the diocese? We are of opinion that he has not. It does not appear, and we have no reason to suppose, that every Roman Catholic living in a remote part of the diocese can be affected pecuniarily by a small loss or gain of the bishop as owner, in connection with the erection of a Roman Catholic church in Easthampton.

Under the St. 1898, c. 368, the defendant's holding of property is "for the religious and charitable purposes of the Roman Catholic Church." In the R. L. c. 36, §§ 44–46, it is strongly implied that there is a difference in the trusts, and in the beneficiaries, among churches in different places, and that the members of a particular parish and those directly connected with the church therein have different pecuniary relations to the church

there from those of the same faith who live in a different part of the same diocese. Upon the record before us this ruling of the judge appears to be wrong. See *Burdine* v. *Grand Lodge of Alabama*, 37 Ala. 478; *Delaware Lodge* v. *Allmon*, 1 Penn. (Del.) 160.

The remaining question is whether the error was prejudicial to the legal rights of the defendant. The manner of impaneling jurors is prescribed by the R. L. c. 176, § 25. The names of those summoned as jurors are written on ballots and placed in a box, and, after the ballots are shaken up, the clerk draws them one by one in succession until twelve are drawn. Apart from challenges, " the twelve men so drawn . . . shall be the jury to try the issue," etc. The order of the judge was a violation of the statutory provision, and of the defendant's right to have the excluded men sit as jurors unless challenged by the plaintiff.

The case was tried by other qualified jurors, and it is argued that the defendant was not injured by the order. Under the R. L. c. 176, § 32, no irregularity in the drawing, summoning, returning or impaneling of jurors is sufficient to set aside the verdict, unless the objecting party was injured thereby. In general it may be assumed that all duly qualified jurors, against whom there cannot be a successful challenge for cause, will consider and try a case properly. But a man may have affiliations and friendships, or prejudices and habits of thought which would be likely to lead him to look more favorably for the plaintiff, or less favorably for him, upon a case of a particular class, or upon one brought by a particular person or a member of a particular class of persons, than would the average juror, even though his peculiarities are not sufficiently pronounced to disqualify him for service. It is in reference to these peculiarities that the parties are given a limited number of peremptory challenges. While they have no direct right of selection, this right of peremptory challenge gives to each party a restricted opportunity for choice among qualified persons.* Anything which renders this statutory right of peremptory challenge materially less valuable is an injury to a party, within the meaning of the statute. We do not intimate that any juror would con-

---

* In R. L. c. 176, § 29, it is provided that " In a civil case each party shall be entitled to two such challenges."

sciously allow feelings of friendship or prejudice, or unusual and peculiar habits of thought, to affect his conduct in the jury room; much less that a party has a right to have the benefit of the peculiar views or special feelings of a particular juror in the trial of his case. But the right of peremptory challenge in the impaneling of jurors cannot be disregarded as of no value to the parties. In the case at bar, a class of persons qualified as jurors, whom the plaintiff thought in such relations of religious affiliation with the defendant that they would be likely to hear his defense in an attitude of special friendship, was withdrawn from the list of jurors. The order of the judge rejecting these men, at the request of the plaintiff, gave him at the outset an additional power of choice, and made his right of peremptory challenge relatively more valuable, while the defendant's similar right was made relatively less valuable. We are of opinion that this was an injury to the defendant which entitles him to a new trial. The number of persons summoned as jurors that belonged to this class does not appear. It only appears that the names of two of them happened to be drawn from the box.

Our decision seems to be in accordance with the weight of authority, although some of the cases depend upon local statutes. *Hildreth* v. *Troy*, 101 N. Y. 234. *Welch* v. *Tribune Publishing Co.* 83 Mich. 661. *Scranton* v. *Gore*, 124 Penn. St. 595. *Montague* v. *Commonwealth*, 10 Gratt. 767. *Kunneen* v. *State*, 96 Ga. 406. *Bell* v. *State*, 115 Ala. 25. *Danzey* v. *State*, 126 Ala. 15.

We are aware that courts have often required pretty clear proof of injury before setting aside a verdict for a cause of this kind. *West* v. *Forrest*, 22 Mo. 344. *Southern Pacific Co.* v. *Rauh*, 49 Fed. Rep. 696. *Pittsburg, Cincinnati, Chicago & St. Louis Railroad* v. *Montgomery*, 152 Ind. 1, 23. *People* v. *Searcey*, 121 Cal. 1. *Tatum* v. *Young*, 1 Porter, (Ala.) 298. *Abilene* v. *Hendricks*, 36 Kans. 196, 200. It is also generally held that an appellate court will not review an exercise of discretion, or a mere finding of fact of a trial judge, determining whether a person shall sit upon a jury. *Commonwealth* v. *Hayden*, 4 Gray, 18. *Grace* v. *Dempsey*, 75 Wis. 313. *People* v. *Searcey*, 121 Cal. 1, 3. *Commonwealth* v. *Moore*, 143 Mass. 136, and cases cited. Whether an error of law like that in the present case, if it arose

only in determining the qualifications of a single juror, should be held so far to injure an objecting party as to require the verdict to be set aside, we do not find it necessary to determine; but when, as in the present case, the ruling applies to a class of persons, we feel constrained to say that there was an injury of which the law should take notice.

*Exceptions sustained.*