COMMONWEALTH *vs.* DANIEL E. DUPONT.

No. 08-P-1475.

Berkshire. September 21, 2009. - October 29, 2009.

Present: TRAINOR, SMITH, & VUONO, JJ.

*Controlled Substances. Practice, Criminal,* Jury and jurors, Empanelment of jury, Challenge to jurors, Hearsay. *Evidence,* Hearsay.

At a criminal trial, the judge did not err in questioning and excusing a juror for cause, after empanelment but before swearing in, where the juror indicated, in his answers to the judge's questions, that he could not state that he would be impartial, given the subject matter of the case. [606-611]

At a criminal trial, the judge did not err in admitting a statement that the defendant made following his arrest and after receiving Miranda warnings, where the defendant's statement, in which he responded in an oddly specific manner to a police detective's accusation that the defendant was involved in a crime, suggested evasion of the detective's statement; further, even if the defendant's statement were a denial of an accusation of guilt, he suffered no prejudice from its improper admission. [611-612]

INDICTMENT found and returned in the Superior Court Department on August 17, 2007.

The case was tried before *John A. Agostini,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*James Petersen,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant, Daniel E. Dupont, was the subject of two indictments charging him with trafficking in cocaine with a net weight of 200 grams or more, and conspiracy to violate a drug law. A Superior Court jury returned a guilty verdict on the conspiracy indictment but failed to reach agreement on the trafficking charge, and the judge declared a mistrial as to that indictment. On appeal, the defendant claims that the judge committed error in (1) excusing a prospective juror for cause and (2) allowing in evidence a statement from a detective accusing the defendant of a drug transaction. We affirm.

1. *Background.* The jury reasonably could have found the following facts. On June 26, 2007, Pittsfield police Detective Michael Nykorchuck received information that the defendant would be engaging in a drug transaction that day with a person from New York, near the Subway sandwich shop on West Housatonic Street in Pittsfield. Nykorchuck gathered several other officers and set up surveillance of the area from multiple vehicles. At approximately 9:40 A.M., they observed the defendant park in the Subway parking lot and wait inside his truck. Shortly thereafter, a woman in a car with New York plates parked near the defendant's truck. Both the woman and the vehicle matched the description contained in the information Nykorchuck had received. The defendant left his vehicle, spoke with the woman through the passenger window of her car, returned to his truck, and began to drive away.

When the defendant drove out of the parking lot, Nykorchuck and the other officers followed him in their unmarked police vehicles. Nykorchuk told Officer David Kirchner to stop the defendant in his marked police cruiser. Kirchner pursued the defendant, with the cruiser's high beams flashing. The defendant accelerated ahead of the police cars, taking sharp turns to try to lose his pursuers. Eventually, the defendant turned onto a dead-end road and was stopped by Kirchner, who placed him in handcuffs. Nykorchuck read the defendant his Miranda rights and informed him that the police planned to search his person and his truck for cocaine. The defendant replied that there was no cocaine on his person or in his truck. Thinking that he may have thrown evidence from his car during the pursuit, two officers retraced the route taken by the defendant and found a bag containing approximately 250 grams of cocaine alongside the road the defendant had traveled. Further facts will be set forth as necessary.

2. *Jury empanelment.* The defendant claims that the judge committed reversible error by excusing a juror, whom we identify as juror no. 14, for cause. We summarize the relevant facts.

At the beginning of the jury empanelment phase of the defendant's trial, the judge addressed the full venire and asked that any prospective jurors who answered affirmatively to any of the questions required by G. L. c. 234, § 28, to approach the sidebar. In those questions, the judge included a question whether any

prospective juror was "aware of any bias or prejudices that [the prospective juror] may have in favor or against either the Commonwealth or the defendant in this case." Juror no. 14 did not respond affirmatively to any of the judge's questions. After the judge concluded his questioning at side bar of those prospective jurors who had responded affirmatively to any of his several questions, the Commonwealth and the defendant exercised their peremptory challenges. After the Commonwealth and the defendant exhausted their respective peremptory challenges, a jury was empaneled that included juror no. 14.

The next day, before the jury was sworn, the prosecutor informed the judge that he had read the juror questionnaires again and noticed for the first time that juror no. 14 had actively supported the district attorney's opponent in the 2006 election. According to the prosecutor, the opponent's campaign against the district attorney "centered specifically around [the district attorney] and his, what [the opponent] would indicate were [the district attorney's] draconian adherence to the drug laws." Because the instant case involved the sale of drugs, the prosecutor requested that the judge inquire of juror no. 14 whether he could be a fair and impartial juror, specifically because the juror would be sitting on a drug case. Over objection, the judge decided to question juror no. 14 "to assure [myself] that [juror no. 14] would be fair minded."

After questioning juror no. 14, the judge, over the objection of the defendant, dismissed him for cause because that juror indicated in his answers that, without hearing all of the evidence, he could not state that he would be impartial. The defendant claims error. We disagree.

During the empanelment process, "[a] judge is only required to 'determine whether jurors [could] set aside their own opinions, weigh the evidence (excluding matters not properly before them) and follow the instructions of the judge.' " *Commonwealth* v. *Bryant*, 447 Mass. 494, 501 (2006), quoting from *Commonwealth* v. *Leahy*, 445 Mass. 481, 495 (2005). An appellate court affords a trial judge " 'a large degree of discretion' in the jury selection process." *Commonwealth* v. *Seabrooks*, 433 Mass. 439, 442-443 (2001), quoting from *Commonwealth* v. *Vann Long*, 419 Mass. 798, 803 (1995). "The determination of a juror's impartiality 'is

essentially one of credibility and therefore largely one of demeanor.' " *Commonwealth* v. *Ferguson*, 425 Mass. 349, 353 (1997), quoting from *Patton* v. *Yount*, 467 U.S. 1025, 1038 (1984). *Commonwealth* v. *Beaz*, 69 Mass. App. Ct. 500, 509 (2007). "In such circumstances, we give a trial judge's determination of impartiality great deference." *Commonwealth* v. *Ferguson*, *supra* at 353.

We summarize the judge's questions and juror no. 14's answers. Juror no. 14 acknowledged that he did indeed support the election of the district attorney's opponent, had held a fund-raising event for her, and had material about her campaign at his place of business. The judge told juror no. 14 that although the district attorney won the election, he would not be prosecuting the case personally but rather it would be his office that would be presenting the case to the jury. Juror no. 14 told the judge that he was aware that the district attorney would not be prosecuting the case.

The judge then asked juror no. 14 if the fact that he actively supported the office's opponent may affect him in any way in being a juror in the case. Juror no. 14 responded, "Not in this particular case, I don't think it would." The judge then asked, "Well, in some other case might it affect you?" Juror no. 14 answered, "Possibly."

The exchange then proceeded as follows:

> JUDGE: "In what way do you think it might affect you in some other case?"
>
> JUROR: "Well, as you may or may not know, [the district attorney's opponent] ran — began to run essentially due to a case . . . that she was the defense attorney. She felt that there was problems with the way the district attorney's office had handled the entire case. If it was a case that was more similar to that, it may be a problem."
>
> JUDGE: "Well, how do you know whether or not this case is more similar to it given the limited information that you have at this point?"
>
> JUROR: "I guess I don't fully — I'm mostly going by the age of the defendant."

JUDGE: "And that's it. So this case might be a similar type of case to the one you had a concern about?"

JUROR: "I mean, there is one similarity in that they concern controlled substances. Short of that, as far as I know at the moment, that's the only similarity."

JUDGE: "Well, my concern is that you have expressed that if it is similar to a type of case that you remember that [the district attorney's opponent] had, then it would be a problem for you to be a fair and impartial juror; is that a fair statement?"

JUROR: "Yes."

JUDGE: "I take it that you don't really know whether this case is similar to that case; is that correct?"

JUROR: "Correct."

JUDGE: "So if it is, then I take it you should not be on the jury because you couldn't be fair to both sides?"

JUROR: "I would say that's true."

JUDGE: "And I guess there is no way of me knowing at this point whether you will consider this case at the end of the trial to be similar to [the district attorney's opponent's] case or not similar. That's the concern that I have."

JUROR: "Sure."

JUDGE: "I have no way of knowing that. I take it that you know they are similar in this sense, that it involves a controlled substance, drugs?"

JUROR: "Uh-huh."

JUDGE: "Other than that, I take it in [the district attorney's opponent's] case, it involves someone of a different age?"

JUROR: "Of a different age and different — yes as far as I know."

JUDGE: "So that's the only information that you have. So

you are not in a position right now to tell me whether or not you could be fair and impartial in this case given the limited information?"

Juror: "Correct."

The questioning of juror no. 14 concluded, and after listening to the arguments of counsel, the judge dismissed juror no. 14 for cause over the objection of the defendant.

On appeal, the defendant claims that the judge, over objection, improperly questioned and excluded an otherwise qualified juror because of his political views concerning the district attorney and his drug policies, and because the juror had stated, based on what he knew of the case, that he did not know if he could be impartial. The defendant contends that the judge's action requires reversal under the Federal and Massachusetts Constitutions, citing *Witherspoon* v. *Illinois*, 391 U.S. 510 (1968); *Morgan* v. *Illinois*, 504 U.S. 719 (1992); and *Searle* v. *Roman Catholic Bishop of Springfield*, 203 Mass. 493 (1909). None of these decisions are material to the issue before us.

Both *Witherspoon* and *Morgan* involved trials of defendants accused of capital offenses. In Illinois, such trials were conducted in two phases: the same jury determined both the innocence or guilt of the defendant and then, if the defendant was found guilty, whether the death penalty should be imposed. In both decisions, the United States Supreme Court ruled that prospective jurors could not be excluded for cause simply because they were either for or against the death penalty. Rather, the Court held that both the State and the defendant were entitled to ask questions of such jurors to determine whether their respective views were such as to disqualify them from jury service. See *Witherspoon* v. *Illinois*, *supra* at 520-523; *Morgan* v. *Illinois*, *supra* at 733-734. Here, the judge did not automatically excuse juror no. 14 because he supported the district attorney's opponent, but rather conducted an inquiry to determine whether juror no. 14 was free of bias.[1]

Despite the clear holdings of the above decisions, the defend-

---

[1]*Searle* v. *Roman Catholic Bishop of Springfield*, *supra* at 497-500, also does not support the defendant's argument. In *Searle*, the trial judge ruled that no person of Roman Catholic faith could sit on the jury. The Court held that the judge should have held an inquiry of those jurors as to bias. Here, as we have stated, the judge did hold such an inquiry of juror no. 14.

ant fashions from those decisions a theory that, if the judge in this matter believed that "the political views of prospective jurors towards the district attorney and his drug policies might affect their impartiality, then he should have asked all prospective jurors before the peremptory challenges were exercised whether their opposition or support for the district attorney and his policies might prevent them from being impartial in a drug case." We reject the defendant's theory.

There is nothing in the record that would alert the judge prior to the empanelment of the jury that the district attorney's election and drug policies would present a substantial risk of an extraneous influence that might affect jurors. See G. L. c. 234, § 28. The defendant did not file a motion or request individual voir dire prior to the empanelment. See *Commonwealth* v. *Ashman*, 430 Mass. 736, 739 (2000) ("[t]he defendant must show that there is some basis for finding that a substantial risk of extraneous influences on the jury exists").

In sum, the judge questioned and observed the prospective juror, who openly admitted that he was unsure of his ability to be impartial given the subject matter of the case. Therefore, the judge had ample cause, if not an outright responsibility, to dismiss the juror and committed no error in doing so.[2]

3. *Alleged hearsay testimony.* The defendant next claims that the trial judge improperly admitted statements made by Nykorchuck and the defendant following the defendant's arrest, after the defendant had received Miranda warnings. The statements were recounted by Kirchner, who testified at trial that "Investigator Nykorchuck told [the defendant] that he knew he was involved in a drug transaction and he believed that there was cocaine in his vehicle." The defendant responded to Nykorchuk's statement by saying, "There is no cocaine in my vehicle or on me."

The defendant argues that his response to Nykorchuk was an unequivocal denial and, therefore, the statements should have been excluded as inadmissible hearsay. Because the statements were admitted over defense objection, we review for prejudicial error. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

---

[2]We also reject the defendant's claim that the judge violated rule 6 of the Rules of Superior Court (2008). That rule is primarily concerned with peremptory challenges. The contested challenge in this matter was not a peremptory challenge but rather one for cause.

It is well established that a criminal defendant's denial of an accusation of guilt is not admissible unless some other hearsay exception applies. See *Commonwealth* v. *Nawn*, 394 Mass. 1, 4-5 (1985); *Commonwealth* v. *Cancel*, 394 Mass. 567, 570-571 (1985). That rule does not apply, however, when the defendant responds to the accusation in an "equivocal, evasive or irresponsive way inconsistent with his innocence." *Id.* at 571, quoting from *Commonwealth* v. *Machado*, 339 Mass. 713, 716 (1959).

We conclude that the defendant's statement, in part, did not respond to the detective's statement. Rather than merely denying his involvement altogether, as might be expected, the defendant responded to Nykorchuck's statement in an oddly specific manner. That the defendant was so careful in his denial suggests evasion of the detective's statement. Nevertheless, even if we concluded otherwise, there was no prejudice. The defendant's only argument that he was prejudiced centers on the admission of the accusation itself. The jury, however, was already well aware that the police, including Nykorchuck, believed that the defendant had just been involved in a drug transaction. The fact that he is "accused" is a condition inherent in his being the defendant in a criminal case, regardless of Nykorchuck's statement. Accordingly, the defendant's claim fails.[3]

*Judgment affirmed.*

---

[3]We likewise reject the defendant's contention that the admission of Nykorchuck's statement violated his right of confrontation because the statement contained opinion evidence based on Nykorchuck's interaction with an undisclosed informant. The testimony in question did not implicate, or even remotely allude to, the use of informant information.