COMMONWEALTH *vs.* VANN LONG.

Essex. December 7, 1994. - March 30, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Jury and Jurors. Practice, Criminal,* Challenge to jurors, Examination of jurors. *Constitutional Law,* Jury, Equal protection of laws.

At a murder trial, the judge erred in denying the challenge of a juror for cause by the defendant after the defendant had exhausted his peremptory challenges, where the judge was aware that the juror harbored a potential ethnic bias against the defendant and where the juror, in response to the judge's questions, never unequivocally stated that he would be impartial nor did he expressly state that he would or could put aside his bias; a new trial was required. [801-805]

At a murder trial, the judge erred by failing to require the prosecutor to explain his peremptory challenges of the two Hispanic members of the venire. [805-807] LYNCH, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on August 8, 1991.

The cases were tried before *Margot Botsford,* J.

*Kevin S. Nixon* for the defendant.

*Susanne Levsen,* Assistant District Attorney (*Kevin M. Mitchell,* Assistant District Attorney, with her) for the Commonwealth.

LIACOS, C.J. On May 26, 1993, a jury convicted the defendant of murder in the first degree, two counts of armed robbery, and armed assault in a dwelling. On appeal, the defendant contends that the trial judge committed reversible error in (1) failing to excuse one allegedly biased juror for cause, (2) failing to require the Commonwealth to explain its peremptory challenges of two Hispanic members of the venire, and (3) denying the defendant's motion for an individual voir dire of prospective jurors. The defendant also asserts that this court should exercise its power pursuant to G. L. c.

278, § 33E (1992 ed.), to reverse the murder conviction and order a new trial. We need discuss only the first two of these claims of error. We hold that the judge erred in seating the allegedly biased juror and in failing to require the Commonwealth to explain its peremptory challenges of two Hispanic members of the venire. Accordingly, we reverse the convictions.[1]

1. *The judge's failure to excuse allegedly biased juror for cause.*

a. *Background.*

The judge asked venire members to come to sidebar, when called, if they thought the defendant's Cambodian ethnicity would affect their ability to be impartial.[2]

After the defendant had exhausted his peremptory challenges, another prospective juror (juror X) was called. Juror X came to sidebar and this colloquy ensued:

THE JUDGE: "Hi."

JUROR X: "Hi. In fairness to the defendant, I was opposed to the war in Vietnam and I was opposed to the Khmer Rouge. Also, along with that, I am self-employed.

"Also, if this goes on for a long period of time, my mother has terminal breast cancer and she has a very short period of time to live, if this goes on and on, I'm afraid I would be a little impatient here, especially with the deliberations. I will want to get out of here. Also, my brother is in prison."

THE JUDGE: "The trial generally . . . will go from nine to one but you will have all afternoon free."

JUROR X: "I do not have a problem serving as long as these attorneys don't have a problem with me.

---

[1]We do not set forth the evidence pertaining to the alleged crimes since those facts set forth which pertain to the empanelment of the jury are dispositive of this appeal.

[2]The judge inquired of the venire: "In this case, ladies and gentlemen, the defendant . . . was born in Cambodia. Does the fact that [the defendant] was not born in the United States but is Cambodian by birth, would that fact in any way maybe make it difficult for you to be fair and impartial . . . as you would be towards the defendant who was born in the United States? If you would answer that question yes, please keep that in mind."

"I also have a problem with the prison —"

THE JUDGE: "Well, first let me ask you, the fact you were opposed to the Vietnamese war and the Khmer Rouge, would either of those feelings . . . interfere with your ability to listen to the evidence in this case and decide this case fairly and only upon the evidence?"

JUROR X: "I would hope that it wouldn't, your Honor."

THE JUDGE: "Why do you think it might?"

JUROR X: "Because the defendant is Cambodian."

THE JUDGE: "I understand that. But you understand there is no indication whatsoever that the defendant was a member of the Khmer Rouge."

JUROR X: "I understand, your Honor. I am more than willing to serve. I will do my best."

THE JUDGE: "All I need to know, but I do need to know it, do you think you can be fair to the defendant and fair to the Commonwealth? The question I would ask on the Commonwealth side, the fact that your brother, did you say he is in prison now?"

JUROR X: "Yes."

THE JUDGE: "So I take it he was prosecuted and convicted?"

JUROR X: "He plea bargained."

THE JUDGE: "That was a federal conviction?"

JUROR X: "Right."

THE JUDGE: "Do you think there is anything about that fact that would make you be unfair?"

JUROR X: "Not in this case. He was involved in tax evasion, and that has nothing to do with this particular case."

THE JUDGE: "Then we are back to the fact that this defendant, he is of Cambodian origin, but there is no connection with the Khmer Rouge. There is nothing connected that is part of this case. I guess my question is do you think you can be fair to him?"

JUROR X: "The only way I can answer that, your Honor, is I would really hope that I could be."

THE JUDGE: "Any questions, [defense counsel]?"

DEFENSE COUNSEL: "Yes, your Honor. I am not quite sure how to phrase it.

"Sir, if you heard conflicting testimony, directly conflicting between the Caucasian police officer and a civilian who was Cambodian, would you have tendencies to believe one over the other because of what you know or what your beliefs were?"

JUROR X: "I would hope that I would have no problem with that. Again, I emphatically tell you that I would lean to the police officer over the civilian, but that doesn't mean that I believe that everything a police officer says is accurate either. I know I give you conflicting answers, but that's it. I don't have a problem if you don't have a problem."

THE JUDGE: "I don't have a problem. I will seat you."

JUROR X: "That's up to you people."

THE JUDGE: "All right."

JUROR X: "Do you want me to go sit down over there?"

THE JUDGE: "Yes."

"(Juror complied.)"

DEFENSE COUNSEL: "Given the fact that we don't have an unequivocal 'I can be fair' and he said 'I hope I can be fair, I would like to think I can be fair,' he can't say he can be fair, given these concerns, I would challenge for cause."

THE JUDGE: "It seems to me he has given some thought to it and has indicated a willingness to follow the dictates of being fair. I think that he will be. I just don't think I will challenge him for cause."

Thus, juror X was seated with the jury and later deliberated on the verdicts.

b. *Discussion.*

The defendant asserts that the judge's denial of his challenge for cause of juror X, after the defendant had exhausted his peremptory challenges, denied him his right to an impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution and under arts. 12 and 29 of the Declaration of Rights of the Massachusetts Constitution. Specifically, the defendant contends that the juror was incompetent by reason of ethnic prejudice because he indicated

that he might not be able to decide the case fairly, "[b]ecause the defendant is Cambodian." The defendant also argues that the juror's statement, "I will do my best" did not amount to a statement that he could be impartial, and that his comment, "I don't have a problem if you don't have a problem. . . . That's up to you people," amounted to a disclaimer of responsibility to be fair to the defendant. The defendant further argues that juror X was incompetent because he indicated that he would favor the testimony of a Caucasian police officer over that of a Cambodian civilian witness. We agree that the judge committed reversible error in not excusing juror X for cause.

Article 12 and the Sixth Amendment, applied to the States through the due process clause of the Fourteenth Amendment, guarantee the right of a criminal defendant to a trial by an impartial jury.[3] *Commonwealth* v. *Susi*, 394 Mass. 784, 786 (1985). *Commonwealth* v. *Soares*, 377 Mass. 461, 478-480, cert. denied, 444 U.S. 881 (1979). *Commonwealth* v. *Bellino*, 320 Mass. 635, 638-642, cert. denied, 330 U.S. 832 (1947). "The failure to grant a defendant a fair hearing before an impartial jury violates even minimal standards of due process." *Commonwealth* v. *Susi*, *supra* at 786, citing *Irvin* v. *Dowd*, 366 U.S. 717, 722 (1961). The presence of even one juror who is not impartial violates a defendant's right to trial by an impartial jury. See *Ross* v. *Oklahoma*, 487 U.S. 81, 85-86 (1988); *Aldridge* v. *United States*, 283 U.S. 308, 314 (1931) ("if any [juror] was shown to entertain a prejudice which would preclude his rendering a fair verdict, a gross injustice would be perpetrated in allowing him to sit").

The trial judge makes the initial determination whether a juror "may not stand indifferent." G. L. c. 234, § 28

---

[3] The defendant also bases his appeal on art. 29, which guarantees "the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit." We have construed the term "judges" in art. 29 to include jurors. See *Hall* v. *Thayer*, 105 Mass. 219, 223 (1870).

(1992 ed.).[4] We afford a trial judge a large degree of discretion in the jury selection process. See, e.g., *Commonwealth* v. *Flebotte*, 417 Mass. 348, 355 (1994); *Commonwealth* v. *Duddie Ford, Inc.*, 409 Mass. 387, 392 (1991); *Commonwealth* v. *Amazeen*, 375 Mass. 73, 83 (1978). See also *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 459 (1989), quoting *United States* v. *McNeill*, 728 F.2d 5, 9 (1st Cir. 1984) ("If the trial judge, who conducted the voir dire . . . believed that [she] had impanelled a jury of twelve open-minded, impartial persons, then we will set aside [her] action only where juror prejudice is manifest"). In exercising discretion determining possible juror bias, however, the "trial court must be zealous to protect the rights of an accused." *Wainwright* v. *Witt*, 469 U.S. 412, 430 (1985), quoting *Dennis* v. *United States*, 339 U.S. 162, 168 (1950). In this case, the judge's failure to excuse juror X violated the defendant's right to trial by an impartial jury.

When juror X came to sidebar, he told the judge that, "[i]n fairness to the defendant, I was opposed to the war in Vietnam and I was opposed to the Khmer Rouge." The judge then asked the juror whether his feelings would interfere with his ability to decide the case fairly. Juror X answered, "I would hope that it wouldn't, your Honor." When the judge asked why his feelings might affect his ability to be fair, the juror admitted, "Because the defendant is Cambodian." At this point, the judge was aware that juror X harbored a potential ethnic bias against the defendant. "[W]here there is abundant latitude for selection of jurors,

---

[4]General Laws c. 234, § 28 (1992 ed.), provides that "if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent, the court shall . . . examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which may . . . cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case."

none should sit who are not entirely impartial." *Davis* v. *Allen*, 11 Pick. 466, 467-468 (1831).

The judge's attempted rehabilitation of juror X did not convincingly show that he could hear the case impartially. In response to the judge's further questioning, juror X said that he would "do [his] best" to decide the case fairly. When the judge asked if he could be fair to the defendant, juror X replied, "The only way I can answer that, your Honor, is that I would really hope that I could be." Juror X never unequivocally stated that he would be impartial, nor did he ever expressly state that he would or could put aside his bias against the Cambodian defendant.[5] His failure to do so indicated that he might not be able to set aside his impressions of Cambodians and render verdicts based on the evidence presented in court.[6] We hold that the judge erred in failing to excuse juror X for cause. Since juror X was a deliberating juror, this error cannot be viewed as harmless.[7] See *Ross* v.

[5]We agree with the defendant that juror X's unequivocal responses to questions concerning whether he could be fair despite his brother's incarceration for tax evasion support the contention that he was incompetent because of ethnic prejudice. Whereas juror X unequivocally stated that his brother's incarceration would not affect his ability to be fair, he never unequivocally stated that he could be fair to the defendant despite his Cambodian ethnicity. Juror X clearly could answer a question unequivocally if he so desired. We conclude that his statements that he "would hope" he could be fair to the Cambodian defendant were not habits of speech, but indications of ethnic bias.

[6]We note also that the judge should have excused juror X for cause when he admitted his tendency to believe the testimony of law enforcement officers over that of civilian witnesses. In response to defense counsel's question whether he would believe a Caucasian police officer's testimony over the conflicting testimony of a Cambodian civilian witness, juror X replied, "I would hope that I would have no problem with that. Again, *I emphatically tell you that I would lean to the police officer over the civilian,* but that doesn't mean that I believe that everything a police officer says is accurate either." This response also shows that juror X was not impartial.

[7]In reaching this conclusion, we are not unaware of the difficulties trial judges confront when empanelling juries. Often potential jurors concoct diverse excuses in order to avoid serving on a jury. A trial judge is in a better position than an appellate court to ascertain a potential juror's credibility and demeanor, and to determine whether the juror is actually bi-

*Oklahoma, supra* at 85; *Gray* v. *Mississippi*, 481 U.S. 648, 668 (1987) ("because the impartiality of the adjudicator goes to the very integrity of the legal system, the . . . harmless-error analysis cannot apply"); *Commonwealth* v. *Soares, supra* at 492.

2. *The judge's failure to require the Commonwealth to explain its peremptory challenges of two Hispanic members of the venire.*

a. *Background.*

After the prosecutor used peremptory challenges to exclude certain prospective jurors, defense counsel stated, "Before there is a call, the two people of Hispanic origin are being challenged. I don't see any other minorities in the general panel."[8] The judge replied, "I don't see any reason for the prosecutor to explain why he is exercising. his chal-

---

ased, or is merely trying to convince the judge to excuse him or her from serving. See *Patton* v. *Yount*, 467 U.S. 1025, 1038 (1984) (determination as to juror's impartiality "is essentially one of credibility, and therefore largely one of demeanor"). Hence, we give such a determination substantial weight. See *Commonwealth* v. *Grice*, 410 Mass. 586, 588 (1991), and cases cited. Nevertheless, we cannot allow such difficulties to overcome a criminal defendant's constitutional right to trial by an impartial jury. We believe that it is better to risk being overly cautious and excuse jurors with asserted biases that may be fabricated, than to insist that a particular juror sit despite his statements that his biases may influence his abilities to decide the case fairly and impartially.

[8]The jurors' surnames were Romero and Miranda. Defense counsel inferred from their surnames that the jurors were Hispanic. This is an acceptable inference. See *Commonwealth* v. *Carleton*, 418 Mass. 773, 775 (1994).

The Commonwealth contends that juror Lopes, who sat on the case, may have been Hispanic. However, neither the prosecutor nor the judge disputed defense counsel's assertion that he did not "see any other minorities" in the venire. Because the prosecutor did not contradict defense counsel's statement, we accept that statement as an accurate description of fact. See *Mejia* v. *State*, 328 Md. 522, 535 (1992) (when a party states his "conclusion concerning the composition of the venire or that a particular venireperson is a member of a group, against whom the party alleges peremptory challenges are being discriminatorily used, and, the other side, being aware of the critical criteria and having had the opportunity to make similar observations, does not challenge that assertion, the fact will be deemed established").

lenges." The prosecutor did not offer any reason for challenging the two jurors.

b. *Discussion.*

The defendant argues that, by failing to require the prosecutor to explain his peremptory challenges of jurors Romero and Miranda, the judge denied the defendant his right to equal protection under the Fourteenth Amendment. The defendant also asserts that the judge's failure denied him his rights under art. 12 to be tried by a jury selected by nondiscriminatory criteria. We agree.

"[R]acial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process,' . . . and places the fairness of a criminal proceeding in doubt." *Powers* v. *Ohio*, 499 U.S. 400, 411 (1991), quoting *Rose* v. *Mitchell*, 443 U.S. 545, 556 (1979). A criminal defendant has a "right to be tried by a jury whose members are selected by nondiscriminatory criteria." *Powers* v. *Ohio, supra* at 404. The equal protection clause of the Fourteenth Amendment "prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race," *id.* at 409, even if the defendant and the excluded jurors are not of the same race. *Id.* at 402. Similarly, art. 12 proscribes the use of peremptory challenges "to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community." *Commonwealth* v. *Soares, supra* at 486. Because our analysis of this issue is the same under the Federal Constitution and the Declaration of Rights, we focus our discussion on art. 12.

Although there is an initial presumption that the use of peremptory challenges is proper, this presumption may be rebutted by showing that (1) a pattern of conduct has developed whereby prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood that they are being excluded from the jury solely on the basis of their group membership. *Commonwealth* v. *Burnett*, 418 Mass. 769, 770 (1994). *Commonwealth* v. *Soares, supra* at 490. Once the issue of improper

peremptory challenges has been raised, the judge must determine whether the requisite prima facie showing of impropriety has been made. *Commonwealth* v. *Burnett, supra* at 771. If the judge determines that a sufficient showing has been made, the burden shifts to the allegedly offending party to provide a group-neutral reason for challenging the prospective juror. *Commonwealth* v. *Soares, supra* at 491. In this case, the judge implicitly found that the defendant had not made a sufficient showing of impropriety, because she did not require the prosecutor to explain his reasons for peremptorily challenging the two Hispanic members of the venire.

We believe that the defendant did make the requisite showing. The challenge of even a single prospective juror within a protected class can, in certain instances, constitute a prima facie showing of impropriety. *Commonwealth* v. *Fryar*, 414 Mass. 732, 738 (1993). *Commonwealth* v. *Harris*, 409 Mass. 461, 465 (1991). In this case, the prosecutor peremptorily challenged two Hispanic members of the venire, who were members of a protected ethnic class. See *Commonwealth* v. *Aponte*, 391 Mass. 494, 508-509 (1984).[9] Therefore, the judge should have required the prosecutor to articulate his reasons for exercising his peremptory challenges to strike two Hispanic members of the venire. The judge's failure to do so constituted reversible error.

*Judgments reversed.*


LYNCH, J. (concurring). I agree that the judge's failure to require the prosecutor to articulate his reasons for exercising his peremptory challenges to strike two Hispanics from the

---

[9]Whether Hispanic persons constitute a racial or an ethnic group, see *Commonwealth* v. *De La Cruz*, 405 Mass. 269, 273 (1989), is immaterial in this case because both racial and ethnic groups are discrete groups protected under art. 1 of the Declaration of Rights, as amended by art. 106 of the Amendments to the Massachusetts Constitution. *Commonwealth* v. *Soares*, 377 Mass. 461, 488-489 & n.33, cert. denied, 444 U.S. 881 (1979). See *Commonwealth* v. *De La Cruz, supra* at 276 (Liacos, C.J., concurring).

jury was reversible error. Since the issue is not likely to arise on retrial, I would not reach the much more difficult issue whether the judge's finding that juror X was indifferent was within the proper exercise of her discretion.