## COMMONWEALTH *vs.* RICHARD D. FERGUSON.

Essex. April 7, 1997. - July 1, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Jury and Jurors. Constitutional Law,* Jury. *Practice, Criminal,* Challenge to jurors, Capital case. *Witness,* Credibility, Impeachment. *Evidence,* Prior misconduct, Relevancy and materiality, Credibility of witness, Impeachment of credibility.

At the trial of an indictment for murder in the first degree, there was no error of law or abuse of discretion in the judge's refusal to excuse the jury foreman who, after a Commonwealth witness had testified, recognized her as his children's baby-sitter some twenty-seven years before, where the juror's memory was faint and where he repeatedly and unequivocally indicated that he could and would be fair and impartial. [351-354]

At a murder trial the judge properly allowed the Commonwealth to call a rebuttal witness to impeach the defendant's testimony with respect to a collateral matter, where the evidence tended to cast doubt on the defendant's credibility: any risk of prejudice was minimal in light of the judge's instructions and the overwhelming evidence of the defendant's guilt. [354-356]

INDICTMENT found and returned in the Superior Court Department on March 16, 1994.

The case was tried before *Robert A. Barton*, J.

*Roger A. Cox* for the defendant.

*Marcia H. Slingerland*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. After trial by jury, Richard D. Ferguson was convicted of murder in the first degree of his wife, Helen Ferguson, by reason of deliberate premeditation and extreme atrocity or cruelty. On appeal, the defendant argues that the trial judge erred in refusing to dismiss the jury foreman, who indicated during the trial that he recognized a Commonwealth witness as having baby-sat for his children approximately twenty-seven years earlier. The defendant also argues that the judge erred in allowing the Commonwealth to call a rebuttal witness whose testimony, the defendant alleges, served only

to attack his character. We affirm the conviction of murder in the first degree. We decline to exercise our power under G. L. c. 278, § 33E, in favor of the defendant.

We summarize the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). The defendant owned a franchise which specialized in fire and water damage cleanup and restoration. On February 26, 1994, the night the victim was killed, she was conducting a water damage cleanup with the defendant and two employees at a bank in Lawrence. The defendant directed the two employees to work in the basement while he and the victim remained upstairs. One of the employees testified that the defendant told the two employees not to use the stairways and not to deliver buckets of water to him upstairs, because he would come downstairs to get the buckets himself. The employee said that she nevertheless tried to use the elevator, pushing the button for several minutes, but that the elevator did not respond. She resumed her work. The defendant later rode the elevator to the basement without difficulty.

Shortly thereafter, the defendant "discovered" the victim's badly beaten body in the company van. He claimed that he had sent the victim out for beverages, and later found her while retrieving something from the van. The victim had sustained multiple slash wounds and severe blows to the head, from which she died several hours later. One of the defendant's employees said that she had noticed and commented about a bloodstain on the defendant's sweatshirt when he had descended to the basement prior to his alleged discovery of the victim.

There was evidence that the relationship between the defendant and the victim was deteriorating. The defendant was spending a great deal of time with one of his female employees. Although the defendant ostensibly hired her to fill a marketing position, the employee described her job as being essentially the defendant's "travel companion." She also said that the defendant directed her to dress and sit provocatively while traveling with him to job sites, apparently to attract male clients. The employee testified as to the defendant's increasing infatuation with her, his sexual advances, his lavish gifts, and his continuous efforts to win her affection. She said that, in the weeks before the murder, the defendant had specifically asked her if she would be interested in him if he were not married.

After the murder, a bank employee informed the police that the defendant had failed to return a key to the building adjacent to the bank. The police searched the building. Behind a ceiling tile they discovered a trash bag which contained the murder weapons (a wrench and a screwdriver), several rags, gloves, a box of ammunition, and two loaded handguns. The blood and hair found on several of these items, most notably the wrench, was consistent with that of the victim. The guns were linked to the defendant, and his fingerprint was found on one of them. The plastic bag, gloves, and rags were identical to those seized from the defendant's company van and office. The missing key to the building was subsequently retrieved from the defendant's kitchen.

A forensic chemist opined that the pattern of the blood splatter on the clothing the defendant wore on the night of the murder was consistent with that of the blood splatter in the van. She concluded that, given the pattern, location, and number of the bloodstains, the defendant's "garments were in close proximity to someone who had the same blood type factors as the victim while she was being beaten about the head and upper body area." The forensic chemist estimated that at least four blows were necessary to produce the number of stains that were on the defendant's clothing. Particles on the sleeve of the defendant's jacket were consistent with the substance that comprised the ceiling tile behind which the trash bag was discovered. We leave the presentation of other evidence for our discussion of the specific issues raised on appeal.

1. *The jury foreman.* The defendant argues that the judge's refusal to excuse the jury foreman violated the defendant's right to a trial by an impartial jury as guaranteed by art. 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution. See *Commonwealth* v. *Vann Long*, 419 Mass. 798, 802 (1995) ("The presence of even one juror who is not impartial violates a defendant's right to trial by an impartial jury"), citing *Ross* v. *Oklahoma*, 487 U.S. 81, 85-86 (1988); *Aldridge* v. *United States*, 283 U.S. 308, 314 (1931).[1]

On learning that the jury foreman had recognized a witness

---

[1]General Laws c. 234, § 28, advises a trial judge that, "if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case

who testified for the Commonwealth, the judge individually questioned the juror in the presence of the defendant and counsel.[2]

The determination of a juror's impartiality "is essentially

---

. . . the juror may not stand indifferent, the court shall . . . examine the juror specifically with respect to such . . . matters which may, as aforesaid, cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case. Such examination . . . shall be conducted individually and outside of the presence of other persons about to be called as jurors or already called." See Mass. R. Crim. P. 20 (b) (2), 378 Mass. 889 (1979).

[2]THE JUDGE: "I understand that you reported to [the] court officer that you recognized one of the witnesses yesterday?"

THE JUROR: "Yes. After the lunch I did recognize her. Originally when you asked if we knew any witnesses I said no, and I hadn't seen the girl for twenty-seven years. She used to baby sit for my children when she was a student at Merrimack College and I didn't recognize the name because that was not her name at the time."

THE JUDGE: "That was [the witness]?"

THE JUROR: "Yes."

THE JUDGE: "You knew her [by her maiden name]?"

THE JUROR: "Yes."

THE JUDGE: "Have you seen that woman in the past twenty-seven years?"

THE JUROR: "No. I didn't recognize her until we came back from lunch. I said, gee that looks like [her], but I still wasn't sure."

THE JUDGE: "Let me ask you this sir. Now that you know that this was your baby sitter twenty-seven years ago would that affect your ability to judge her credibility objectively just as you would a stranger whom you never knew?"

THE JUROR: "No." [The transcript originally indicated that the juror had responded "Yes." After checking the tape recording, the stenographer officially changed the response to "No." The defendant does not argue that the answer should be otherwise.]

The judge sent the juror outside and heard arguments from counsel. Defense counsel requested that the juror be excused, and the prosecutor objected. The judge then resumed his inquiry of the juror.

THE JUDGE: "Mr. [foreman], do you feel that you can completely put out of your mind the fact that that woman, twenty-seven years ago who, under her maiden name, was your baby sitter and judge her credibility just as you would a stranger's?"

THE JUROR: "Yes, I do."

THE JUDGE: "I am satisfied that you will remain fair and impartial. I am ordering you, sir, not to mention this to any other juror in this particular case because you are the foreman of this jury so you definitely will be one of the

one of credibility, and therefore largely one of demeanor," *Patton* v. *Yount*, 467 U.S. 1025, 1038 (1984). In such circumstances, we give a trial judge's determination of impartiality great deference. See, e.g., *Commonwealth* v. *Lattimore*, 396 Mass. 446, 449 (1985); *Commonwealth* v. *Amazeen*, 375 Mass. 73, 83 (1978); *Commonwealth* v. *Cleary*, 41 Mass. App. Ct. 214, 219 (1996). See also *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 460 (1989) ("A trial judge's initial determination that a juror stands indifferent will not be disturbed on appeal unless the defendant demonstrates that there was a substantial risk that the case would be decided in whole or in part on the basis of extraneous issues").

The juror had not seen the witness in over twenty-seven years. The juror was unsure whether he even recognized the witness until after her testimony on the second day of trial. After court, the judge was informed by the court officer that the juror reported that he recognized the witness. The next day, prior to any more testimony, the judge questioned the juror. The judge properly could conclude that the juror's memory of this witness was faint at best. More importantly, the juror repeatedly and unequivocally indicated that he could and would be fair and impartial.[3] Compare *Commonwealth* v. *Auguste*, 414 Mass. 51, 57-58 (1992). See *Commonwealth* v. *Mahoney*, 406 Mass. 843, 851 (1990) ("the judge was entitled to accept the suspect juror's declaration . . . that she was dis-

---

deliberating jurors.

"I am telling you now, sir, I am ordering you not to tell any other juror either before deliberations or during deliberations of your knowledge of that witness twenty-seven years ago and the circumstances under which you knew her, sir.

"I am confident that you will remain fair and impartial. Fair and impartial to the Commonwealth and fair and impartial to the defendant."

THE JUROR: "I will."

The judge sent the juror out of the courtroom and made the following findings: "I am satisfied not only on the basis of the words that I heard, watching the demeanor of the individual, I am satisfied that he will bend over backwards to remain fair in this particular case and so, under the circumstances, exercising my discretion, based on the answers I've heard and the behavior and mannerisms of this individual, I feel that he is and can be fair and impartial."

[3]The defendant's reliance on *Commonwealth* v. *Vann Long*, 419 Mass. 798 (1995), is misplaced. In that case, the juror at issue "never unequivocally stated that he would be impartial, nor did he ever expressly state that he would or could put aside his bias against the Cambodian defendant." *Id.* at 804.

interested and not impeded by any emotional or intellectual commitment"). "Where, as here, the judge who had the opportunity to observe the prospective juror, makes a determination that the juror is indifferent after exploring the grounds for a possible claim that the juror was not impartial, we cannot conclude, in the absence of any affirmative evidence to the contrary, that the judge abused his discretion." *Ascolillo, supra* at 461, quoting *Commonwealth* v. *Amazeen, supra* at 83. We conclude that the judge carefully considered the issue and determined that the juror could be fair and impartial. Nothing in the record convinces us that there was an error of law or an abuse of discretion on the part of the judge.

2. *The rebuttal witness.* Over the defendant's objection, the judge permitted the Commonwealth to call a former job applicant of the defendant as a rebuttal witness. This witness testified that in January, 1994, she met the defendant while he was working at her parents' house and he offered her a job. On the following day, she went with the defendant to call on a prospective customer. She testified that the defendant told her to wear a short skirt, "[a]nything sexy that [she] had," and instructed her on how to sit and stand provocatively to attract the attention of any prospective male customers. The defendant asserts that this admission of evidence of his prior misconduct constituted reversible error.

It is well settled that the prosecution may not introduce evidence of the defendant's prior bad acts to show bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose. See *Commonwealth* v. *Fordham*, 417 Mass. 10, 22 (1994); *Commonwealth* v. *Leonardi*, 413 Mass. 757, 763 (1992); *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). "Evidence that has relevance to issues other than bad character or criminal propensity is admissible if not outweighed by its unfair prejudice, which is a determination for the judge to make and one which we do not disturb unless, in our judgment, it is palpably wrong." *Fordham, supra* at 22.

The rebuttal testimony describing the defendant's dress and behavior requirements for female "marketers" may show that the defendant engaged in a pattern of using sexual appeal to procure business, but the evidence is of marginal relevance to any material issue on the charge of murder in the first degree. However, the rebuttal testimony did impeach the defendant

on a collateral matter. See *Simon* v. *Solomon*, 385 Mass. 91, 107 (1982).

Testifying on his own behalf, the defendant had maintained that his relationship with the female marketing employee was merely friendly and professional, and not of a sexual nature. He said that he never asked that employee if she would be more interested in him if he were not married. He denied or attempted to explain his behavior toward her, and his testimony conflicted with that of the employee in several respects.

On cross-examination of the defendant, the prosecutor inquired about other women that the defendant had hired or considered hiring to travel with him as "marketers." The defendant denied having ever directed his female employees, including the marketer, or prospective employees to dress and sit provocatively to attract male clients.[4]

Although the rebuttal testimony was collateral to the main issues at trial, the evidence "tended to cast doubt on the defendant's credibility because it created a basis from which the jury might infer that because the defendant's testimony [as to his requirements for female "marketers"] was not accurate, other portions of his testimony also might be inaccurate."[5] *Commonwealth* v. *Fleury-Ehrhart*, 20 Mass. App. Ct. 429, 434 (1985).

A judge, in his discretion, may permit impeachment by extrinsic evidence on collateral matters. *Simon*, *supra* at 107. See *Commonwealth* v. *Zezima*, 365 Mass. 238, 242 n.5 (1974) ("Extrinsic evidence to rebut a witness on a collateral matter is not admissible as of right . . . although, in the judge's discretion, it is not error to admit such testimony" [citations omitted]), *S.C.*, 387 Mass. 748 (1982).[6] On cross-examination, the defendant did not object to the prosecutor's questioning of the defendant regarding other female "marketers." The

[4]Defense counsel did ask the judge to instruct the jury not to draw inferences from questions which the defendant answered in the negative. The judge gave the requested instruction.

[5]The judge determined that the rebuttal testimony "supported [the female marketing employee] as far as her responsibilities and relationship was as far as the defendant is concerned at the very least." The judge also found that the evidence was not too remote and that its evidentiary value outweighed any danger of unfair prejudice.

[6]If rebuttal testimony also bears on the defendant's character, thereby raising the danger of unfair prejudice, the better practice is to exclude such

judge properly could conclude that the jury should have the benefit of the rebuttal evidence which tended to contradict the defendant's testimony. See *Simon, supra.*

The risk of prejudice also was minimized by the judge's repetition of special cautionary instructions as to the proper use of the evidence. See *Commonwealth* v. *Rivera,* 424 Mass. 266, 273 (1997); *Commonwealth* v. *Dunn,* 407 Mass. 798, 807 (1990). In the context of the entire case and in light of the overwhelming evidence of the defendant's guilt, the effect of the challenged evidence was insubstantial. See *Commonwealth* v. *Miles,* 420 Mass. 67, 73 (1995); *Commonwealth* v. *Hanger,* 377 Mass. 503, 510-512 (1979); *Commonwealth* v. *Grammo,* 8 Mass. App. Ct. 447, 456 (1979).

3. *G. L. c. 278, § 33E.* Pursuant to our obligation under G. L. c. 278, § 33E, we have considered the entire record and conclude that the interests of justice do not require entry of a lesser degree of guilt or a new trial.

*Judgment affirmed.*

evidence if offered solely as impeachment on a collateral matter. See *Benjamin* v. *Felton & Son,* 9 Mass. App. Ct. 926, 926 (1980).