NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-690                                           Appeals Court

COMMONWEALTH  vs.  EDGARDO RIOS.

No. 17-P-690.

Middlesex.     November 14, 2018. – November 12, 2019.

Present:  Agnes, Blake, & Neyman, JJ.

Rape.  Assault with Intent to Rape.  Indecent Assault and
     Battery.  Jury and Jurors.  Practice, Criminal, Jury and
     jurors, Voir dire, Interrogation of jurors, Challenge to
     jurors, Empanelment of jury, Instructions to jury, Lesser
     included offense, Duplicative charges, Duplicative
     convictions.  Due Process of Law, Examination of jurors.

     Indictments found and returned in the Superior Court
Department on February 7, 2012.

     The cases were tried before Heidi E. Brieger, J.

     Michael P. Gerace for the defendant.
     Emily Kathleen Walsh, Assistant District Attorney, for the
Commonwealth.

     AGNES, J.  A Superior Court jury found the defendant,

Edgardo Rios, guilty on two indictments charging rape of a child

by force, G. L. c. 265, § 22A, two indictments charging

aggravated rape of a child, G. L. c. 265, § 23A, one indictment

charging indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B, and assault with intent to rape a child, G. L. c. 265, § 24B, as a lesser included offense of aggravated rape of a child (indictment one).[1]  The defendant raises numerous claims of error.  We vacate the judgment on indictment one, and affirm the judgments on the remaining indictments.

Background.  We summarize the evidence presented at trial, reserving certain details for the discussion of specific issues. The victim was eleven years old at the time of trial in 2014 and between eight and nine years old at the time described in the indictments.  The defendant and the victim's mother met through church in 2005, and later reconnected in 2010 or 2011.  Upon reconnecting, the defendant began assisting the mother by driving her places -- including to appointments, stores, and church -- as the mother did not have a car.  The mother would

---

[1] On indictment one, the judge directed a verdict in favor of the defendant on the greater offense, and a verdict slip went to the jury on the lesser included offense of assault with intent to rape a child.  The judge directed a verdict in favor of the defendant with respect to two additional indictments alleging aggravated rape of a child and two additional indictments alleging rape of a child by force.  The defendant was sentenced to concurrent terms of imprisonment in State prison for not less than fifteen nor more than fifteen years and one day on the aggravated rape convictions, a concurrent probationary term on the indecent assault with intent to rape conviction, and, on the remaining convictions, ten years' probation from and after the committed sentences.

assist the defendant by translating things into English. Through this relationship the defendant and the mother became friends, and the defendant came to know the victim and the victim's two siblings. The defendant would sometimes be invited to the mother's house and other times would just arrive unannounced.

The victim made her first complaint of abuse on January 7, 2012. On that date, the mother hosted a birthday party for her godson at her house. That morning, she called the defendant for a ride to get a cake and other items for the party. He agreed to do so and spent most of the day with the mother and the victim. During the party, Jacqueline Flores, a friend of the mother who had never met the defendant, observed the defendant sitting alone with the victim in the living room. She saw the defendant touch the victim "[i]n her private part" or vaginal area while the victim was playing with the defendant's laptop. When the defendant left the party, Flores, who testified as the first complaint witness, questioned the victim about what had occurred, and the victim admitted that she had been touched in her private part.

At trial, the victim testified to several incidents of abuse. According to the victim's testimony, some of these incidents occurred only once and others recurred. The victim testified to one incident that occurred at her mother's house

while playing on the defendant's laptop where the defendant touched her private part on top of her clothes. While this testimony was similar to the conduct observed by Flores on January 7, 2012, the victim testified that this occurred on a different occasion.

The victim also testified to abuse occurring in the defendant's van. She testified that on one occasion when the defendant was giving her a ride to school, he touched her front private part and inserted his index finger in her butt. She also testified to a separate occasion in the defendant's van where the defendant rubbed his hand on her front private part when taking the victim to see the Lowell Christmas tree.

The victim further testified that on more than one occasion at the defendant's house on his bed he inserted his tongue in her butt. Finally, the victim testified that on one occasion at the defendant's house the victim returned from the bathroom to find the defendant with his pants down and "balls" exposed. On this occasion, the victim testified that the defendant tried to get near her by trying to go to her front private part while her pants were down but was unable to do so because she kicked out in his direction.

Discussion. On appeal, the defendant argues that (1) the trial judge improperly refused to excuse a juror for cause; (2) two of the convictions are duplicative of convictions on greater

offenses and should be vacated; (3) the trial judge erroneously instructed the jury concerning (a) collective memory and (b) specific unanimity, and (c) improperly declined to instruct the jury on lesser included offenses.  The defendant also contends that (4) the prosecutor made improper statements in closing argument.

1.  Jury empanelment.  The defendant contends that the judge erred by not striking a juror for cause.  The judge first arranged for the prospective jurors to answer questions in writing and under oath that were contained in a written "worksheet."  These questions included those that must be asked in every case, see Mass. R. Crim. P. 20 (b), 378 Mass. 889 (1979),[2] as well as other questions that were suggested by the parties based on the nature of the offenses charged -- sexual offenses against a child.

The judge then commenced an individual voir dire of each prospective juror in open court and in the presence of the

---

[2] Rule 20 (b) of the Massachusetts Rules of Criminal Procedure provides in part that "[t]he court shall . . . examine on oath a person who is called as a juror . . . to learn whether he is related to either party, has any interest in the case, has expressed or formed an opinion, or is sensible of any bias or prejudice."  See G. L. c. 234, § 28.  Section 28 was repealed and replaced by G. L. c. 234A, § 67A, after the time of the defendant's trial, see St. 2016, c. 36, § 4, but the provisions pertinent to this appeal were not materially changed.  See note 7, infra.

defendant, but out of the hearing of other prospective jurors. See Commonwealth v. Flebotte, 417 Mass. 348, 355 (1994) (acting under general superintendence powers, Supreme Judicial Court ordered that in cases involving sexual offenses against minors, judge must upon request question each potential juror individually about whether potential juror was victim of childhood sexual offense). The judge on her own excused the first potential juror, who taught at a school that recruited "highly court involved youth" and who was associated with a group that "gives emotional support to people who have been accused." The juror stated that it would be "very hard" for her to be fair and impartial. When questioned further by the judge, the prospective juror said she "would try" to be fair and impartial, "would try" to decide the case based only on the law and the evidence, and agreed with the judge's assessment that she could not give those questions a "yes" or "no" answer. The judge appropriately exercised her discretion and excused this juror for cause.[3]

The second juror to be individually questioned reported that she was the victim of a violent crime as a result of having been kidnapped in Brazil. "I don't know how -- you know, I'll

---

[3] We note that, "by statute, [a person] may not be excluded from serving as a juror because of his occupation. See G. L. c. 234A, § 3." Blank v. Hubbuch, 36 Mass. App. Ct. 955, 958 (1994).

try to be impartial.  I don't know how much that would affect throughout the process."  She also said, "[B]eing a mother of young kids, I think that plays a role in terms of, you know, the case."  The judge reviewed with this juror each of the questions on her confidential juror questionnaire in which she expressed a reservation about whether she could be fair and impartial.[4]  When asked by the judge if she could put her personal experiences aside, listen to the evidence fairly and impartially, and render a verdict, she responded, "I'll do it to the best of my ability."  The judge inquired further, learning that the juror's husband was with her when she was kidnapped, and again asked the potential juror if she could be fair and impartial, whereupon she stated, "I'll do the best of my ability."  And, following a further inquiry by the judge about her ability to put aside her personal experiences and to be fair and impartial, the prospective juror stated, "I'll do it to the best of my ability."

The defendant challenged this juror for cause, arguing that prior to the voir dire the prospective juror stated in several places in her juror questionnaire that she could not be fair and

---

[4] The record before us does not contain the potential juror's confidential juror questionnaire, G. L. c. 234A, § 22, or the written worksheet prepared by the court.  We discern the contents of the questionnaire and the worksheet from the transcript of the empanelment process.

impartial. The judge rejected the defendant's challenge, noted his objection, and found that this prospective juror could be fair and impartial. The defendant then used a peremptory challenge to remove this prospective juror from consideration, and the judge excused her.

Although the juror in question was not among the deliberating jurors, the judge's finding that the juror was indifferent and thus eligible to sit on the jury required the defendant to use his final peremptory challenge. The defendant contends that he was prejudiced by being forced to accept another juror (second juror) who was called to sidebar for a voir dire after the juror in question; the defendant unsuccessfully challenged the second juror for cause, and he otherwise would have removed the second juror by using a peremptory challenge.[5] See Commonwealth v. McCoy, 456 Mass. 838, 842 (2010) ("prejudice generally is shown by the use of a peremptory challenge to remove the juror who allegedly should have been excused for cause together with evidence that the defendant later was forced to accept a juror he would have challenged peremptorily but was unable to because his peremptory challenges had been exhausted" [emphasis omitted]).

---

[5] The defendant also unsuccessfully sought additional peremptory challenges in order to have the second juror excused. The judge denied this request and found that the juror was indifferent. The juror was seated.

A person charged with a crime has a right under both the Massachusetts and United States Constitutions to be tried by an impartial jury. Commonwealth v. Long, 419 Mass. 798, 801-802 (1995). See Davis v. Allen, 11 Pick. 466, 467-468 (1831) (impartial jury "is equally demanded by the general principles of the common law"). The defendant's right to an impartial jury is violated if even one member of the deliberating jury is not impartial. See Gray v. Mississippi, 481 U.S. 648, 668 (1987) ("because the impartiality of the adjudicator goes to the very integrity of the legal system, the . . . harmless-error analysis cannot apply"). The judge's duty to ensure that the jury is impartial extends to the entire trial and through the jury's deliberations. See Commonwealth v. Colon, 482 Mass. 162, 167-169 (2019) (where evidence of extraneous influence first surfaced during deliberations, judge properly exercised discretion by conducting individual voir dire of each juror, excusing all influenced jurors, and determining that remaining jurors were impartial).[6]

---

[6] Apart from the duty to ensure that both the defendant and the Commonwealth have a trial before an impartial jury, the judge has a responsibility to each person called for service as a juror. "Judges and lawyers are reminded that jurors are essential to the administration of justice. The jury system provides the most important means by which laypersons can participate in and understand the legal system." Commonwealth v. Auguste, 414 Mass. 51, 59 n.3 (1992).

When a question of potential bias on the part of a prospective juror arises, whether based on an answer to a question on the confidential juror questionnaire, a worksheet prepared by the judge, or an oral statement made by or attributed to the prospective juror, the judge has a duty to make inquiry of the juror and determine whether the prospective juror can be fair and impartial and render a true and just verdict.  G. L. c. 234, § 28.[7]  See Commonwealth v. Clemente, 452 Mass. 295, 325 (2008) (when during jury selection judge learned of improper conversations among some members of venire who had

_____

[7] General Laws c. 234, § 28, second par. provides, in pertinent part:

> "For the purpose of determining whether a juror stands indifferent in the case, if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent, the court shall, or the parties or their attorneys may, with the permission and under the direction of the court, examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which may . . . cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case.  Such examination may include a brief statement of the facts of the case, to the extent the facts are appropriate and relevant to the issue of such examination, and shall be conducted individually and outside the presence of other persons about to be called as jurors or already called."

not yet been called, he conducted thorough inquiry of each potential juror, excusing those who expressed doubts about whether they could be impartial).

Impartiality in the context of whether a prospective juror is indifferent and thus qualified to hear the case does not mean that the individual has no opinions or views about any matter directly or indirectly related to the case. "No human being is wholly free of the interests and preferences which are the product of his cultural, family, and community experience. Nowhere is the dynamic commingling of the ideas and biases of such individuals more essential than inside the jury room." Commonwealth v. Soares, 377 Mass. 461, 487, cert. denied, 444 U.S. 881 (1979). Rather, whether prospective jurors are impartial depends on whether the jurors are able to "set aside their own opinions, weigh the evidence (excluding matters not properly before them), and follow the instructions of the judge" (citation omitted). Commonwealth v. Bryant, 447 Mass. 494, 501 (2006).[8] "Juror bias is a question of fact to be

---

[8] See Rule 6 (4) (h) of the Rules of the Superior Court, adopted in 2017, after the trial in this case. The Supreme Judicial Court has distinguished between a bias that arises from the facts of the case which is not disqualifying if the judge is satisfied that the prospective juror can set it aside and decide the case based solely on the evidence and the law, and a bias that is based on the juror's "life experience or belief system." In the latter circumstance, the judge must determine whether despite that bias the juror can be impartial because such biases

determined by the judge.  A finding that a juror is impartial will not be overturned on appeal unless the defendant makes a clear showing of abuse of discretion or that the finding was clearly erroneous."  Commonwealth v. Emerson, 430 Mass. 378, 384 (1999), cert. denied, 529 U.S. 1030 (2000).  See Commonwealth v. Ferguson, 425 Mass. 349, 353-354 (1997); Long, 419 Mass. at 804 n.7; Commonwealth v. Ascolillo, 405 Mass. 456, 460 (1989).  In assessing the credibility of a prospective juror's answers to questions by the judge or by counsel, the judge may accept a juror's statement that he or she is impartial unless "solid evidence of a distinct bias" appears.  Commonwealth v. Leahy, 445 Mass. 481, 499 (2005).[9]

---

may be impossible to set aside.  Commonwealth v. Williams, 481 Mass. 443, 448-449 (2019).

[9] See, e.g., Commonwealth v. Chongarlides, 62 Mass. App. Ct. 709, 711-712 (2004) ("Here, the juror indicated she 'knew' the victim.  The judge appropriately questioned her as to the nature of the relationship and her ability to remain impartial.  In light of the juror's explanation that she knew the victim only by virtue of living in the same town and having attended the same high school, it was not error for the judge to rely on her representation that she could be impartial").  In rare circumstances, the lack of impartiality among a significant number of prospective jurors may give rise to a presumption that none of the potential jurors are impartial.  See Commonwealth v. Morales, 440 Mass. 536, 542 (2003).  See also Commonwealth v. Mattier (No. 2), 474 Mass. 261, 275 (2016) ("We have recognized certain extreme circumstances where implied bias could be found: [1] where it is disclosed that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction; [2] in a case where the trials of

Recently, the Supreme Judicial Court stated that, "[a]s a general principle, it is an abuse of discretion to empanel a juror who will not state unequivocally that he or she will be impartial." Commonwealth v. Colton, 477 Mass. 1, 17 (2017). In Colton, in response to a juror's reservations about the concept of lack of criminal responsibility, the judge explained the law to the juror. When asked if he could be fair to both the defendant and the Commonwealth, the juror responded, "Yes, I think so." The Supreme Judicial Court concluded that the judge did not err in empanelling the juror, observing that the juror's response "fairly could be viewed as unequivocal, and the judge apparently credited it as such." Id. It is clear, therefore, from Colton, that the law does not require a prospective juror to use a specific form of words (for example, "I will be impartial") before a judge may determine that the juror is impartial. Instead, the question whether a juror stands indifferent "turns on credibility and is the province of the trial judge." Leahy, 445 Mass. at 497. "It is well settled that a potential juror's use of seemingly equivocal language is not determinative of the juror's ability to be

---

codefendants are severed and an individual observes the first trial and sits as a juror in the second trial; and [3] where a juror who has been the victim of a similar crime . . . has consciously concealed that fact from the parties or the court" [quotations and citations omitted]).

impartial."  Commonwealth v. Bannister, 94 Mass. App. Ct. 815,

827 (2019).[10]  Contrast Long, 419 Mass. at 804 (juror who

admitted bias should have been excused because he said only that

he "hope[d]" he could be impartial); Commonwealth v. Auguste,

414 Mass. 51, 53, 58 (1992) (judge improperly empanelled several

jurors who repeatedly expressed grave misgivings about their

abilities to be impartial).[11]  Furthermore, "a judge is not

---

[10] See Commonwealth v. Prunty, 462 Mass. 295, 302 (2012) (no
abuse of discretion in seating African-American juror who
initially stated without reservation that he could be impartial,
but later stated he "would be able to do my best" to not let
defendant's racial prejudice affect juror's ability to be
impartial); Ascolillo, 405 Mass. at 459, 461 (no abuse of
discretion in empanelling juror whose final answer to judge's
inquiry about whether his experience as police officer and
assault victim would make him partial was "[n]o, I don't think
so"); Commonwealth v. Wilborne, 382 Mass. 241, 254 (1981) (no
abuse of discretion in empanelling juror who stated that she
"did not think" that her friend's experience as rape victim
would affect her ability to be impartial); Commonwealth v. Jaime
J., 56 Mass. App. Ct. 268, 273 (2002) (no abuse of discretion in
seating juror where, after asking juror if he could decide case
based "solely on the evidence you hear," juror replied, "I
probably could do that," notwithstanding that juror had informed
judge that girlfriend had been raped and assaulted nine years
earlier and that he had participated in prosecution of case; and
juror had stated that he had not formed opinion about case, but
that "it might be difficult" for him to be impartial).

[11] Judges must be alert to jurors who on the one hand
profess that they can be impartial, and yet "admit, contrarily,
to those strong and deep impressions, which will close the mind
against the testimony that may be offered in opposition to
them."  Leahy, 445 Mass. at 498, quoting Commonwealth v.
Sinnott, 399 Mass. 863, 883 (1987).  See, e.g., Commonwealth v.
Clark, 446 Mass. 620, 630 (2006) (juror should have been excused
for cause where, "[a]lthough [she] represented that she could be
impartial, [juror] explained that her ability to be impartial
with respect to her views about African-Americans 'would depend

required to excuse a juror or allow [a] challenge for cause simply because the juror reveals a potential bias upon initial questioning.  It is proper for the judge to question further in order to clarify whether the juror could be impartial."  Commonwealth v. Jaime J., 56 Mass. App. Ct. 268, 274 (2002).  In such cases, the question is whether, upon further inquiry that is both meaningful and fair,[12] and an assessment of the juror's credibility, the judge finds that the juror can be fair and impartial and render a true and just verdict.  See Leahy, 445 Mass. at 495.

In this case, the judge did not abuse her discretion in concluding that the juror was impartial.  The juror candidly acknowledged her reservations but stated on three occasions that she would be fair and impartial.  The judge, who was present and in a position to assess the demeanor of the juror, was entitled

---

on the person's circumstances.'  This response [was] ambiguous, and might have been an expression of racial stereotyping that could have affected the outcome of the case.  Further questioning was required to resolve the ambiguity").

[12] "Although the judge may reasonably determine, after a meaningful inquiry, that a juror's doubts about his or her own impartiality are unfounded, that determination should be made after the judge conducts an inquiry that could be reasonably expected to determine impartiality. . . .  That determination should come from the juror's answers to the judge's questions, and not from answers suggested or, in fact, required by the questions.  An inquiry into impartiality must be fair and neutral.  Jurors should not be coerced into a particular response."  Auguste, 414 Mass. at 57-58.

to conclude that the juror's additional comment ("to the best of my ability") was not a retraction or qualification of the juror's statement that she would be impartial, but rather merely a form of speech.  See Colton, 477 Mass. at 17.  See also Commonwealth v. Chambers, 93 Mass. App. Ct. 806, 811 (2018).[13]  Contrast Long, 419 Mass. at 799-800, 804 (error to seat juror where defendant was of Cambodian ancestry and charged with murder, juror stated he was opposed to war in Vietnam and to Khmer Rouge, and, when asked if he could be impartial, stated, "I would really hope that I could be"; fact that juror also said earlier in colloquy, "I am more than willing to serve. I will do my best," did not supply basis for judge's decision to seat juror).

2.  Duplicative convictions.  The defendant argues that the convictions of assault with intent to rape and indecent assault and battery on a child should each be vacated as duplicative of the convictions on the greater offense of rape of a child by force.  To convict a defendant of both a greater and lesser included offense, the judge must "clearly instruct the jury that

---

[13] In reviewing an exercise of discretion by a trial judge, an appellate court must take into consideration the "nuances of conduct, tone, and evidence" that informed the decision made by the trial judge and that may "escape the cold record" on appeal. Commonwealth v. Preston, 393 Mass. 318, 324 (1984).

they must find that the defendant committed separate and distinct criminal acts to convict on the different charges." Commonwealth v. Kelly, 470 Mass. 682, 700 (2015). Where the judge fails to do so "the conviction of the lesser included offense must be vacated as duplicative, even in the absence of an objection, if there is any significant possibility that the jury may have based convictions of greater and lesser included offenses on the same act or series of acts." Id.

As to the conviction of assault with intent to rape a child (G. L. c. 265, § 24B), this crime is a lesser included offense of forcible rape of a child (G. L. c. 265, § 22A). Commonwealth v. Egerton, 396 Mass. 499, 503 (1986). Accordingly, the assault with intent to rape a child conviction was susceptible of being duplicative of the two convictions of rape of a child by force. See Kelly, 470 Mass. at 700.

The Commonwealth maintains that the assault with intent to rape a child offense was intended to relate to the separate and distinct incident at the defendant's apartment where the defendant approached the victim with his pants down, and was unsuccessful in carrying out the rape when she kicked in his direction. However, the verdict slip for the assault with intent to commit rape did not specify a date or a theory of the crime, and the judge's instructions on the elements of assault with intent to rape did nothing to specifically tie that offense

to a particular incident.  Accordingly, we are unable to determine what facts the jury used to support the conviction of assault with intent to rape.  Based on the other evidence presented, the jury could have convicted the defendant of assault with intent to rape (albeit as a lesser included offense) based on either the incident in the van on the way to school (finger in child's anal opening) or conduct at the defendant's apartment (tongue in child's anal opening).  As that conduct was the subject of other indictments (for which the defendant was ultimately convicted), a separate and distinct act instruction should have been given to eliminate the risk of duplicative convictions.  Without such an instruction we cannot say that there is no significant possibility that the conviction on indictment one was duplicative of the convictions on the greater offenses.  See Kelly, 470 Mass. at 700.[14]

3.  Jury instructions.  a.  Collective memory.  The defendant contends that the judge erred by including certain language in an instruction concerning the jury's fact-finding function.  The judge instructed:

---

[14] There is no significant possibility that the conviction of indecent assault and battery on a child under the age of fourteen was duplicative of the remaining convictions.  The verdict slip for that offense specified "hand on child's vaginal area."  The verdict slips for the other remaining convictions specified either "tongue in child's anal opening" or "finger in child's anal opening."

> "Now, I'd like to call your attention to the fact that there may be evidence that you do not remember collectively as a jury.  You are free to ignore that evidence if it is something that not all of you are comfortable [sic] because not all of you remember.  It is your memory as a collective jury about what the testimony was, and that recollection is what should control your deliberations."

The defendant did not object to this instruction, so we review to determine whether, if error, it created a substantial risk of a miscarriage of justice.  See Commonwealth v. Santos, 95 Mass. App. Ct. 791, 795 n.7 (2019).  The judge's choice of words is unfortunate; jurors should not be instructed under any circumstances to ignore evidence.  The judge's use of the word "ignore," taken out of context, is troubling.  However, when viewed in its entirety we think the instruction would have been understood by the jury as a direction to consider all the evidence, and to rely on their "collective memory."[15] Compare Commonwealth v. Miller, 457 Mass. 69, 78 (2010) (instruction that "jurors' collective memory should control" mitigated prosecutor's error in closing argument); Commonwealth v. Colon, 449 Mass. 207, 225 n.18, cert. denied, 552 U.S. 1079 (2007) (same).  Importantly, the judge in this case repeatedly told the jury that their verdict must be unanimous, and that they should not take a vote until each juror's point of view was discussed and considered.

---

[15] Nothing we say in this opinion should be read as an endorsement of the use of such an instruction.

We are satisfied that, even if this particular expression of the collective memory instruction was erroneous, any error did not create a substantial risk of a miscarriage of justice. To the extent that the instruction is viewed as ambiguous or at least opaque, we are reassured by the fact that the judge instructed the jury to "give a full and fair consideration to all of the evidence in the case" and for each juror to "fully and fairly express your opinion about the particular question you're discussing."

b.  Specific unanimity.  The defendant also argues that the judge's instruction on specific unanimity was defective.[16]  As the instruction was not objected to, we review to determine if error, whether it created a substantial risk of a miscarriage of

---

[16] In part, the judge instructed:

"You heard evidence -- some of it you may believe and some of it you may not -- it's up to you -- that certain events took place in the car, certain events took place in the house, certain events may have taken place in another house.  There are a number of elements for each of those offenses.  You must unanimously agree that all of the elements of the offense have been proved to find Mr. Rios guilty of some offense in a car or some offense in a house or some offense in a different house.  In other words, you can't part of you agree that some things happened some places and some other things happened other places.  That won't be enough to establish guilt beyond a reasonable doubt.  You must unanimously agree that all the elements of the offense took place in one place or another or both.  And, so, that is the Commonwealth's obligation."

justice.  Santos, 95 Mass. App. Ct. at 795 n.7.  A specific unanimity instruction is required where an "indictment alleges in statutory terms a criminal offense occurring during a period of several months and, at trial, there is evidence that the defendant committed several such offenses within that period . . . ."  Commonwealth v. Sanchez, 423 Mass. 591, 598 (1996).  A specific unanimity instruction explains that "the jury 'must be unanimous as to which specific act constitutes the offense charged.'"  Id. at 598-599, quoting Commonwealth v. Conefrey, 420 Mass. 508, 512 (1995).

Apart from the conviction of assault with intent to rape, which, as we explained above, we vacate on separate grounds, the specific unanimity instruction was required for only the indictment alleging indecent assault and battery on a child under the age of fourteen, which specifically alleged "hand on child's vaginal area" on diverse dates.[17]  Based on the evidence

---

[17] The specific unanimity instruction was not required for the convictions on the two indictments that specifically alleged "finger in child's anal opening" because the victim testified that this conduct occurred only once.  (The two convictions based on a single act -- one for aggravated rape of a child, and one for rape of a child by force -- were not duplicative, as each crime contains an element that the other does not.  See Morey v. Commonwealth, 108 Mass. 433, 434 [1871].)  As to the convictions on the two indictments alleging "tongue in child's anal opening[,]" the instruction was not required despite testimony that the conduct occurred multiple times because the victim did not describe particular incidents and instead testified only to a pattern of conduct.  See Commonwealth v. Medina, 64 Mass. App. Ct. 708, 717 (2005) ("a specific unanimity

presented at trial, we discern no error.  With respect to this indictment, the jury heard evidence of conduct that could have supported a conviction occurring in several different locations. The judge properly instructed, "You must unanimously agree that the Commonwealth has proved that [the defendant] committed the offense on at least one occasion during the time frame alleged." The subsequent instruction -- which apparently was made at the joint request of the parties -- focused on the need for the jury to unanimously agree that each offense occurred at a particular location.  This was correct.  The jury did need to unanimously agree on at least one location where the offense occurred.  The instruction was consistent with the first instruction on unanimity and did nothing to negate that instruction.

c.  Lesser included offenses.  A lesser included offense instruction should be given where "the evidence at trial presents 'a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense.'"  Commonwealth v. Donlan, 436 Mass. 329, 335 (2002), quoting Commonwealth v. Drewnowski, 44 Mass. App. Ct. 687, 692 (1998).

The judge did not err in declining to instruct on statutory rape as a lesser included offense of rape of a child

---

instruction is not required where the victim testifies to a pattern of repetitive and abusive conduct by the defendant").

by force.  The element that distinguishes the two crimes is the use of force.  Commonwealth v. Thayer, 418 Mass. 130, 132 (1994) ("[S]tatutory rape . . . differs from forcible rape because the Commonwealth is not required to prove lack of consent, force, or threat of bodily injury").  As the Commonwealth proceeded under a theory of constructive force, it was required to prove "the victim was afraid or that she submitted to the defendant because his conduct intimidated her."  Commonwealth v. Newcomb, 80 Mass. App. Ct. 519, 521 (2011).  Considering the age difference between the defendant and the victim and the history of the relationship, and particularly that the victim stopped one episode of abuse by pulling her pants up and kicking in the defendant's direction, and, further, that she initially denied that she had been abused because, she testified, she was afraid, there was no rational view of the evidence that would allow the jury to conclude that the defendant penetrated the victim but did not use fear or intimidation to do so.  Moreover, because the defendant testified and denied that he had even touched the victim, "[h]e can hardly claim to be prejudiced by [the refusal to give the] instruction . . . ."  Thayer, 418 Mass. at 134.  Similarly, the judge did not err in declining to instruct on indecent assault and battery on a child under the age of fourteen on the greater offenses of rape of a child by force and aggravated rape.  Such an instruction was not required because

there was no "evidence that dispute[d] or put[] into question the element of penetration." Donlan, 436 Mass. at 337. We disagree with the defendant that the instruction was required because evidence of penetration was unclear. The victim testified to penetration. The defendant testified to never inappropriately touching the victim. "[I]n ordinary circumstances, [evidence to dispute the element of penetration] cannot be the mere possibility that the jury might not credit a portion of the Commonwealth's evidence, which of course they are always free to do." Id.

4. Closing argument. Last, the defendant argues that the prosecutor misstated facts in the closing argument. Having reviewed the specific statements the defendant complains about in his brief, which were not objected to, we believe that they were nearly all the product of fair inferences based on the evidence. See Commonwealth v. Cutty, 47 Mass. App. Ct. 671, 675 (1999) (party has "every right to make a closing argument based upon and referring to [the] testimony and all fair inferences which [can] be drawn therefrom"). See generally Mass. G. Evid. § 1113(b)(2) (2019). Assuming, without deciding, that it was improper to argue that the defendant was trying to put "his balls" in the victim's front private part based on the victim's testimony that the defendant tried "to go to [her] front private part" with his "balls" exposed, we are confident that this

statement did not create a substantial risk of a miscarriage of justice given the judge's instructions concerning what is evidence and in light of the fact that we vacate, on other grounds, the only conviction that could have arisen from this conduct.

Conclusion.  The judgment on indictment one is vacated, the verdict is set aside, and indictment one is to be dismissed. The remaining judgments are affirmed.

So ordered.